IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

VERSIAH MANGEL TAYLOR,

      Plaintiff,

v.                                  CASE NO. 5:14-cv-96-RH-GRJ

CHRISTOPHER PEKEROL, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on ECF No. 86, Individual Defendant Glenn Miller's Motion to Dismiss and Incorporated Memorandum of Law. Plaintiff has filed a response in opposition. (ECF No. 95.) The motion to dismiss is, therefore, ripe for review. For the reasons explained below, it is recommended that Defendant's motion to dismiss be granted.

## I.  INTRODUCTION

      Plaintiff, an inmate incarcerated by the Federal Bureau of Corrections, initiated this case on April 10, 2014, by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, asserting claims against six Defendants. (ECF No. 1.) On May 14, 2014, the Court dismissed the case without prejudice for failure to state a claim upon which relief may be

granted. (ECF Nos. 8–9.) Plaintiff then filed a motion to amend, which was denied, followed by an appeal to the Eleventh Circuit. (ECF Nos. 10–11.) On August 14, 2015, the Eleventh Circuit vacated this Court's order dismissing Plaintiff's case, and remanded the case to this Court to allow Plaintiff an opportunity to amend his complaint. (ECF No. 51.)

Upon remand, Plaintiff filed a first amended complaint and second amended complaint on October 19, 2015, and November 20, 2015, respectively. (ECF Nos. 56, 65.) Plaintiff then filed a third amended complaint on January 21, 2016. (ECF No. 80.)

Plaintiff's third amended complaint ("complaint") asserts claims against four Defendants: (1) the United States of America; (2) Agent Christopher Pekerol, Internal Revenue Service; (3) Agent Margaret Weiss, Internal Revenue Service; and (4) United States Marshal Glenn Miller. Plaintiff's allegations stem from the United States' criminal investigation of Plaintiff for filing fraudulent federal income tax returns, as well as Plaintiff's subsequent indictment, trial, and conviction. (*Id.*)

## II.  BACKGROUND & ALLEGATIONS[1]

On September 7, 2012, Plaintiff was arrested by Alabama state authorities for trafficking cocaine.[2] Plaintiff says that following his arrest, Defendants Pekerol and Weiss contacted Alabama state authorities and informed them Plaintiff was also wanted by the government for federal tax fraud. Alabama District Court Judge Peterson set Plaintiff's bail at $250,000. On December 6, 2012, Judge Peterson reduced Plaintiff's bail to $150,000, Plaintiff posted bond, and was released.

Plaintiff was arrested on federal charges on March 25, 2013.[3] Following Plaintiff's arrest, Defendant Miller ("USM Miller"), a United States Marshal in Panama City, Florida, contacted Doug Valeska, Henry County

---

[1] Plaintiff's complaint contains factual allegations dispersed among 69 different counts. (ECF No. 80.) The allegations contained in this report and recommendation, however, are limited to those pertaining to USM Miller and general supporting allegations. Additionally, the Court may take judicial notice of the public filings in the criminal proceedings against Plaintiff and Plaintiff's subsequent petition for writ of habeas corpus "without converting the motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (noting that the district court "properly took judicial notice" of documents filed in another case because such documents "were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned'"). Accordingly, various background facts obtained from public court filings are also included to present a more comprehensive picture and analysis.

[2] *Taylor v. Taylor*, No. 1:15-cv-00761-SLB-JHE, ECF No. 5, Ex. A (N.D. Ala.). In his response to USM Miller's motion to dismiss, Plaintiff refers the Court to exhibits regarding his state and federal case, which were filed in *Taylor*, No. 1:15-cv-00761-SLB-JHE. (ECF No. 95 at 4.)

[3] *See United States v. Taylor*, No. 5:13-cr-13-MW, ECF No. 14 (N.D. Fla.).

District Attorney, on March 29, 2013, and, according to Plaintiff, unlawfully disclosed that Plaintiff had been arrested for federal tax fraud. Plaintiff claims USM Miller wanted Mr. Valeska to influence Judge Peterson to revoke Plaintiff's state court bail and impose a detainer against Plaintiff so the federal court would deny Plaintiff pretrial release.

USM Miller allegedly had Mr. Valeska draft a "false" motion to revoke bond and file it with the Henry County Clerk.  Plaintiff says that USM Miller also unlawfully disclosed information to Alabama bail bond agents, Rickey Stokes and John Turner, in an effort to have them inform Judge Peterson that they wanted Plaintiff's bond to be revoked due to the federal charges. USM Miller then delayed taking Plaintiff to his initial appearance in federal court until the Henry County Clerk scheduled a bond revocation hearing. The day after the Clerk scheduled the hearing, Plaintiff was finally transported to Panama City, Florida, for his federal initial appearance on April 2, 2013.[4]

Plaintiff says the government initially determined that Plaintiff qualified for pretrial release. USM Miller, however, had William Maddox, Henry County Sheriff, fax a copy of the "false" notice of the state court

---

[4] *See Taylor*, No. 5:13-cr-13-MW, ECF No. 17.

bond revocation hearing to serve as a detainer. Upon receiving the notice, Plaintiff waived his right to a detention hearing in federal court pending disposition of the state court motion to revoke bond.

Plaintiff claims that Sheriff Maddox never extradited Plaintiff for his state court bond revocation hearing because Sheriff Maddox was under the guise that USM Miller would not release Plaintiff from federal custody. Plaintiff then sent USM Miller an Interstate Agreement on Detainers ("IAD") notice and requested USM Miller serve the notice on Alabama state authorities for resolution of the detainer. USM Miller, however, never served the notice.

On April 9, 2013, Judge Peterson revoked Plaintiff's state court bond, and instructed Sheriff Maddox to "place hold on defendant."[5] According to Plaintiff, however, his record reflects that no detainer or revocation of bail exists.

Plaintiff remained in custody pending his federal trial. Plaintiff was subsequently convicted of his federal charges on February 5, 2014.[6]

Plaintiff's complaint asserts three claims—Counts 63, 64, and

---

[5] *See Taylor*, No. 1:15-cv-00761-SLB-JHE, ECF No. 5, Ex. C.

[6] *See Taylor*, No. 5:13-cr-13-MW, ECF No. 148.

65—against USM Miller. (*Id.* at 22–23.)[7] In Count 63, Plaintiff alleges that USM Miller unlawfully disclosed to Mr. Valeska that Plaintiff had been arrested for federal tax fraud. Plaintiff says this violated his statutorily imposed confidentiality for which he seeks statutory damages. (*Id.* at 22.)

Count 64 asserts that from March 29, 2013 through April 2, 2013, USM Miller conspired with Mr. Valeska and Sheriff Maddox to deprive Plaintiff of pretrial release pending his federal trial. Plaintiff claims that this conspiracy violated his Fourth, Fifth, and Eighth Amendment rights.[8] Plaintiff seeks compensatory and punitive damages as relief. (*Id.* at 22–23.)

Finally, in Count 65, Plaintiff alleges that USM Miller unlawfully disclosed information with the intent to make Mr. Stokes and Mr. Turner seek revocation of Plaintiff's state court bond. Plaintiff says the unlawful disclosure violated his statutorily imposed confidentiality. Plaintiff seeks statutory damages for unjust embarrassment and damage to his reputation. (*Id.* at 23.)

---

[7] The remaining counts are asserted against different Defendants and are not addressed in USM Miller's motion to dismiss.

[8] The Court construes Count 64 as one pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

### III.  STANDARD OF REVIEW

The Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Further, in *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009), the Supreme Court stated that *Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible."

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferefences therefrom. *See, e.g.*, *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994)). While a *pro se* litigant's allegations are entitled to the benefit of liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a court does not, however, have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an

action." *GJR Invs v. Cnty of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by *Iqbal*, 556 U.S. 662).

On a motion to dismiss, the Court ordinarily must limit its consideration to the complaint and written instruments attached as exhibits. *See U.S. ex rel. Osheroff v. Humana*, 776 F.3d 805, 811 (11th Cir. 2015). Nonetheless, "a district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the [p]laintiff's claim, and (2) its authenticity is not challenged." *Id.* (noting that the records of plaintiff's underlying Florida Supreme Court case were plainly central to his claims and that plaintiff did not challenge the authenticity of the records). "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *Id.* n.4.

## IV.  DISCUSSION

USM Miller argues that Plaintiff's claims fail as a matter of law. Further, USM Miller says that at all relevant times, he was acting within his discretionary authority and is, therefore, entitled to qualified immunity. Lastly, USM Miller argues that to the extent Plaintiff's claims are construed as *Bivens* claims, Plaintiff fails to allege any facts that plausibly suggest USM Miller violated Plaintiff's constitutional rights. (ECF No. 86.)

## A.   Unlawful Disclosure

Plaintiff's complaint fails to specify whether his claims against USM Miller are against Miller in his individual or official capacity. To the extent that counts 63 and 65 are asserted against USM Miller in his individual capacity, Plaintiff's claims fail as a matter of law.[9]

Under 26 U.S.C. § 6103(a), tax return information must be kept confidential. "[N]o officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise under the provisions of this section." § 6103(a). A taxpayer may bring a civil action for damages against the United States "[i]f any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to [the] taxpayer in violation of any provision of section 6103." 26 U.S.C. § 7431.

Section 7431 does not provide a cause of action against the officer or employee in his individual capacity.  Any claims under section 7431 must be asserted against the officer or employee in his official capacity. Thus, to the extent that counts 63 and 65 are asserted against USM Miller under

---

[9] Miller's motion to dismiss solely focuses upon the claims asserted against him in his individual capacity. Claims asserted against Miller in his official capacity are addressed in a separate motion to dismiss. *See* ECF No. 89.

section 7431 in his individual capacity, Plaintiff's claims fail and should be dismissed.[10]

## B.    Constitutional Violations

Plaintiff's constitutional claims in count 64 also fail to state a claim upon which relief may be granted. Plaintiff has not alleged facts that plausibly suggest USM Miller violated Plaintiff's rights under the Fourth, Fifth, or Eighth Amendment.

### 1.    *Fourth Amendment*

The Fourth Amendment provides the right to be free from unreasonable searches and seizures and requires that warrants be issued upon probable cause. U.S. Const. amend. IV. Plaintiff's complaint does not specify whether his Fourth Amendment claim is one asserting an unreasonable search, unreasonable seizure, or warrant issued absent probable cause. Nevertheless, because none of Plaintiff's factual allegations suggest that USM Miller subjected Plaintiff to an unreasonable

---

[10] Based on Plaintiff's complaint, counts 63 and 65 appear to assert only unlawful disclosure claims in violation of Plaintiff's statutory rights. Nothing suggests that Plaintiff is attempting to assert that the alleged unlawful disclosures violated his constitutional rights. Nonetheless, to the extent that USM Miller argues that counts 63 and 65, construed as *Bivens* claims, fail as a matter of law, the Court agrees. Plaintiff's entire complaint only asserts Fourth, Fifth, and Eighth Amendment violations. (ECF No. 80 at 26.) Plaintiff does not provide any suggestion whatsoever as to how these alleged unlawful disclosures violated any of his constitutional rights and the Court declines to re-write his claims for him.

search or that a warrant was issued without probable cause, Plaintiff's

Fourth Amendment claim can only be construed as a malicious

prosecution, false arrest, or false imprisonment claim.

In the context of malicious prosecution, Plaintiff's claim fails. "To

establish a federal malicious prosecution claim under section 1983 (or

*Bivens*), the plaintiff must prove a violation of his Fourth Amendment right

to be free from unreasonable seizures in addition to the elements of the

common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872,

882 (11th Cir. 2003); *Whiting v. Traylor*, 85 F.3d 581, 584 (11th Cir. 1996);

*cf. Albright v. Oliver*, 510 U.S. 266, 274–75 (1994) (explaining that there is

no constitutional source of a right to be free from malicious prosecution,

but suggesting that the Fourth Amendment is the appropriate source to

pursue a malicious prosecution claim). Under Florida law, to establish a

claim of malicious prosecution, the plaintiff must establish:

> (1) an original judicial proceeding against the present plaintiff
> was commenced or continued; (2) the present defendant was
> the legal cause of the original proceeding; (3) the termination of
> the original proceeding constituted a bona fide termination of
> that proceeding in favor of the present plaintiff; (4) there was an
> absence of probable cause for the original proceeding; (5)
> there was malice on the part of the present defendant; and (6)
> the plaintiff suffered damages as a result of the original
> proceeding.

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing

*Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002)); *Leonard*

*v. FBI*, 405 F. App'x 386, 388 (11th Cir. 2010).

Plaintiff's malicious prosecution claim fails because Plaintiff has not

been acquitted, nor has his federal conviction been set aside.[11]

Additionally, and most notably, Plaintiff also fails to suggest how USM

Miller was involved with Plaintiff's criminal prosecution. Plaintiff does not

assert that USM Miller was the legal cause of his arrest by Alabama state

authorities, nor by federal authorities.

Moreover, the United States Constitution does not prevent law

enforcement officers, such as USM Miller, from disclosing allegations

involving a criminal defendant. As USM Miller points out, the United States

Marshals Service routinely informs prosecutors and courts of relevant

detainers, pending criminal charges, and custody-related information

pertaining to criminal defendants. Courts frequently use this information to

determine whether a defendant should be granted pretrial release or be

detained pending trial. Providing this information to prosecutors, law

enforcement agencies, and courts does not give rise to a malicious

prosecution claim, especially where the underlying conviction has not been

set aside.  In short, even taking Plaintiff's allegations as true, Plaintiff has

---

[11] *Taylor*, No. 5:13-cr-13-MW (N.D. Fla.).

not and cannot establish a malicious prosecution claim against USM Miller.

Similarly, Plaintiff's claim, construed as a false arrest claim, also fails. Where officers have probable cause to arrest, the seizures are reasonable under the Fourth Amendment and a plaintiff has no claim for false arrest under section 1983, or Florida law. *Hendricks v. Sheriff, Collier Cnty., Fla.*, 492 F. App'x 90, 93 (11th Cir. 2012); *Lewis v. Morgan*, 79 So. 3d 926, 928–29 (Fla. 1st DCA 2012).  Probable cause exists where the facts and circumstances are "sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). While probable cause requires more than suspicion, it does not require convincing proof. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). When an arrest warrant is based upon indictment, a grand jury's determination that probable cause existed to return the indictment also establishes probable cause for the issuance of the arrest warrant. *Garmon v. Lumpkin Cnty., Ga.*, 878 F.2d 1406, 1409 (11th Cir. 1989).

Plaintiff was indicted by a federal grand jury on March 20, 2013.[12] Based on the indictment, an arrest warrant was issued for Plaintiff on

---

[12] *Taylor*, No. 5:13-cr-13-MW, ECF No. 1 (N.D. Fla.).

March 21, 2013.[13] Plaintiff was then arrested on March 25, 2013.[14] Plaintiff

does not suggest that USM Miller had anything to do with the grand jury

proceedings or the issuance of the arrest warrant, nor can he. Plaintiff's

amended complaint is simply devoid of any allegations that could support a

false arrest claim against USM Miller.

Likewise, to the extent Plaintiff's Fourth Amendment claim is

construed as a false imprisonment claim, his claim also fails. A "false

imprisonment claim under section 1983 is grounded in the Fourth

Amendment's guarantee against unreasonable seizures." *Ortega v.

Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) (citing *Groman v. Township

of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). "Where a police officer

lacks probable cause to make an arrest, the arrestee has a claim under

section 1983 for false imprisonment based on a detention pursuant to that

arrest." *Id.*

In this case Plaintiff has not and cannot allege a lack of probable

cause because the grand jury returned an indictment and Plaintiff was

subsequently tried and convicted. *See United States v. Jennings,* 991 F.2d

725, 728 (11th Cir. 1993) ("[W]hile a grand jury's function is to prevent a

---

[13] *Id.*, ECF No. 7.

[14] *Id.,* ECF No.14.

defendant from having to defend against a crime for which there is no probable cause, a petit jury's guilty verdict establishes both probable cause and guilt."). Accordingly, Plaintiff has not and cannot state a claim for false imprisonment or any other Fourth Amendment violation. Plaintiff's Fourth Amendment claim against USM Miller should be dismissed.

### 2. *Fifth Amendment*

Plaintiff's Fifth Amendment claim also fails to state a claim for relief. The Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. V. Similar to Plaintiff's Fourth Amendment claim, Plaintiff also fails to clarify whether USM Miller allegedly deprived him of life, liberty, or property. Nonetheless, at best, Plaintiff's claim can only be construed as one involving a liberty interest.

At the outset, the problem with Plaintiff's due process claim is that he waived his right to a detention hearing. Under the Bail Reform Act, a defendant may be detained pending trial if the court finds by clear and convincing evidence "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. §§ 3142(e), (f). Upon motion by the government, the court shall hold a detention hearing.

Section 3142(f). At the detention hearing, the defendant is "afforded an opportunity to testify, present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." *Id.* The defendant, however, may waive his right to a detention hearing. The procedural requirements for a pretrial detention hearing set forth in section 3142(f) meet constitutional due process requirements. *United States v. Gaviria*, 828 F.2d 667, 669 (11th Cir. 1987) (citing *United States v. Delker*, 757 F.2d 1390, 1395 (3d Cir. 1985)).

Where, as here, a defendant waives his right to a detention hearing and—for whatever reason—does not exercise his right to request one at a later date, he cannot claim he was denied liberty without due process of law.  Waiving the right to a detention hearing waives the right to contend that he was detained pending trial without due process of law.

Additionally, to the extent Plaintiff's claim asserts that USM Miller denied Plaintiff liberty by failing to resolve the alleged detainer issue, Plaintiff's claim fails. Pursuant to the IAD,

> a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Rather than requiring the immediate presence of the prisoner [like a writ of habeas corpus ad prosequendum], a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be taken by the

receiving State in order to obtain the prisoner.

*United States v. Mauro*, 436 U.S. 340, 358 (1978).

Petitioner does not and cannot allege that USM Miller actually imposed an IAD detainer on Plaintiff.  Under the IAD, a detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Mauro*, 436 U.S. at 359 (quoting H.R.Rep. No. 91-1018, p. 2 (1970); S.Rep. No. 91-1356, p. 2 (1970)); *see also Reed v. Farley*, 512 U.S. 339, 342 n.1 (1994) ("A detainer is 'a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking either to hold the prisoners for the agency or to notify the agency when release of prisoner is imminent.'").

Plaintiff says Sheriff Maddox provided a notice of the state court bond revocation hearing. The notice of the state court bond revocation hearing was not a "detainer" within the meaning of the IAD, as it was not filed with an institution in which Plaintiff was serving a sentence. At the time, Plaintiff was not yet serving a sentence in either a state or federal institution. Instead, he was a pretrial detainee pending trial in both state and federal court. It is well settled that a pretrial detainee is not a prisoner serving a "sentence of imprisonment" within the meaning of the IAD. *United*

*States v. Saffeels*, 982 F.2d 1199, 1204 (8th Cir. 1992), *rev'd on other grounds*, 510 U.S. 801 (1993) (IAD did not apply to defendant whose parole revocation was pending because defendant was no different than a pretrial detainee); *United States v. Currier*, 836 F.2d 11, 16 (1987) (terms of the IAD apply exclusively to prisoners actually serving their sentences, and not to pretrial detainees or those who have been convicted but not yet sentenced); *United States v. Tummolo*, 822 F. Supp. 1561, 1564 (S.D. Fla. 1993) ("The [Interstate Agreement on Detainers Act] does not apply to pretrial detainees.").  Accordingly, Plaintiff has failed to allege a viable claim that USM Miller violated his rights under the IAD. USM Miller's failure to intervene with Plaintiff's bond revocation hearing and pretrial detention does not give rise to a constitutional violation.[15]

Even liberally construing Plaintiff's Fifth Amendment claim in the light most favorable to him fails to plausibly suggest that USM Miller denied Plaintiff life, liberty, or property without due process of law. Plaintiff's Fifth Amendment claim should, therefore, be dismissed.

### 3.   *Eighth Amendment*

Likewise, Plaintiff has failed to state a viable Eighth Amendment

---

[15] Plaintiff has not alleged that following his federal conviction, a detainer was lodged against him for his pending state charges and that he was not produced for trial.

claim against USM Miller. The Eighth Amendment prohibits excessive bail, excessive fines, and cruel and unusual punishment. U.S. Const. amend. VIII.; *Baze v. Rees*, 553 U.S. 35, 47 (2008). Plaintiff has not set forth any factual allegations even suggesting excessive fines or cruel and unusual punishment. The Court, therefore, construes Plaintiff's Eighth Amendment claim to be one asserting excessive bail.

"Although the Excessive Bail Clause does not guarantee a right to bail, it does guarantee that any bail imposed 'not be excessive in light of the perceived evil." *Campbell v. Johnson*, 586 F.3d 835, 842 (11th Cir. 2009) (quoting *United States v. Salerno*, 481 U.S. 739, 754 (1987)). Merely because a detainee is unable to post bail, however, does not render the amount excessive. *See United States v. Ramirez*, No. 09-20295-CR, 2010 WL 1911355, at *7 (S.D. Fla. May 12, 2010) ("It is well settled in this Circuit that the court can insist on a financial condition of release, even if the defendant is unable to meet this condition, if the court finds that it is reasonably necessary to insure the defendant's presence.").

In this case, Plaintiff asserts that USM Miller deprived Plaintiff of federal bail because the state detainer issue was never resolved before Plaintiff's federal trial and sentencing. But, because Plaintiff waived his right to a detention hearing and failed to challenge his pretrial detention

during his federal criminal proceeding, bond was irrelevant.USM Miller, as a United States Marshal, had no authority to impose or deny bond in a criminal proceeding. Plaintiff cannot argue that excessive bail was imposed in his case. Plaintiff's Eighth Amendment claim should, therefore, also be dismissed.

### 4.    Conspiracy to Violate Constitutional Rights

Plaintiff also has failed to state a viable claim for conspiracy to violate his constitutional rights. "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citing *GJR Invs.*, 132 F.3d at 1370); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("the plaintiff must prove an actionable wrong to support the conspiracy"). The plaintiff must also show that the parties reached an understanding to deny plaintiff of his constitutional rights. *Grider*, 618 F.3d at 1260.

As discussed, Plaintiff has failed to allege facts plausibly suggesting that USM Miller violated Plaintiff's constitutional rights. Without an actionable wrong, Plaintiff cannot allege a conspiracy claim.

Additionally, Plaintiff's claim that USM Miller, Mr. Valeska, and Sheriff Maddox conspired to falsely represent to Judge Peterson that Plaintiff was

arrested for committing federal crimes for the purpose of depriving Plaintiff of pretrial release, is nothing more than a conclusory allegation. Plaintiff's conspiracy claim needs more teeth to state a plausible conspiracy claim.

Plaintiff alleges that USM Miller fabricated the idea for the "false" motion to revoke bond, and then had the motion faxed to the federal court for Plaintiff's initial appearance. He further claims that because his record does not contain a copy of the motion to revoke bond, the motion to revoke bond was false.  Plaintiff offers no factual allegations suggesting how the motion to revoke bond was somehow "false." Nor does he offer any suggestion as to how USM Miller "falsely represented" to Judge Peterson that Plaintiff was arrested on federal charges.

Instead, at best, Plaintiff's allegations show that he was released on state bond and then arrested on the federal charges, following which, USM Miller contacted Mr. Valeska to inform Mr. Valeska that Plaintiff had been arrested. Mr. Valeska subsequently filed a motion to revoke Plaintiff's state bond.  Based upon these allegations, Plaintiff offers no facts suggesting plausibly how USM Miller falsely represented anything to anyone.

Further, there are no allegations plausibly suggesting that the motion to revoke bond was "false." Although Plaintiff claims his record does not contain a motion to revoke bond, his state court record does indeed

contain the motion to revoke bond. *See Taylor*, No. 1:15-cv-00761-SLB-JHE, Doc. 5, Exs. A–B. Plaintiff's state court record also contains a copy of Judge Peterson's order granting the motion to revoke bond. *Id.*, Ex. 3.  And while Plaintiff's federal record may not contain a copy of the state motion to revoke bond, such an allegation lends no support to his contention that the motion was "false." As noted, when considering pretrial release, courts commonly consider information that is not filed on the docket, such as a defendant's criminal history and other pending charges. Simply put, none of Plaintiff's allegations support his conspiracy claim. And because none of his factual allegations plausibly suggest that a conspiracy existed, his conspiracy claim fails.

Because Plaintiff has wholly failed to state a claim for violation of either the Fourth, Fifth, or Eighth Amendments, count 64 should also be dismissed.

## C.   Qualified Immunity

USM Miller also argues that he is also entitled to qualified immunity as to claims against him in his individual capacity because he was acting within his discretionary authority and because Plaintiff has failed to allege facts plausibly suggesting that he violated Plaintiff's clearly established constitutional rights.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court must consider two factors: (1) whether the factual allegations show that the officer's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

In this case, even assuming Plaintiff's allegations are true, USM Miller is entitled to qualified immunity. All of Plaintiff's allegations concern actions taken by USM Miller while acting as a United States Marshal. There are no allegations that USM Miller was acting outside his discretionary authority during the time he engaged in the conduct about which Plaintiff complains.

In his response, Plaintiff confuses USM Miller's assertion that he was acting within his discretionary authority with the discretionary function exception under the Federal Tort Claims Act ("FTCA"). (ECF No. 95 at 1–2.) The FTCA provides that a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from the actions of federal employees taken within the scope of their office or

employment. *See* 28 U.S.C. § 2679. The FTCA's discretionary function

exception, however, bars

> [a]ny claim based upon an act or omission of an employee of
> the Government, exercising due care, in the execution of a
> statute or regulation, whether or not such statute or regulation
> be valid, or based upon the exercise or performance or the
> failure to exercise or perform a discretionary function or duty on
> the part of a federal agency or an employee of the Government,
> whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Plaintiff's suit against USM Miller in his individual

capacity is not one against the United States. The FTCA, the FTCA's

discretionary function exception, and any relevant tests to determine

whether the discretionary function exception applies are, therefore,

inapplicable to the instant motion to dismiss.

Likewise, Plaintiff again is confused about the applicability of the

FTCA by arguing that under 28 U.S.C. § 2680(h), sovereign immunity is

waived for claims arising out false imprisonment and false malicious

prosecution. Qualified immunity, applicable to individual government actors

is different from sovereign immunity, which is applicable to the government

in it official capacity.  Under the he Eleventh Amendment of the

Constitution sovereign immunity protects a state or one of its agencies or

departments from being sued in federal court unless the state consents.

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Qualified immunity, on the other hand, shields a government official from civil liability while acting in his or her discretionary functions unless the official's actions violated clearly established statutory or constitutional rights. *Harlow*, 457 U.S. at 818. USM Miller has asserted a qualified immunity defense—not a sovereign immunity defense.  Thus, section 2680(h) has nothing to do with qualified immunity.

Under the second prong of the qualified immunity test, Plaintiff has failed to establish that USM Miller violated any clearly established statutory or constitutional rights. As discussed above, Plaintiff's unlawful disclosure allegations in counts 63 and 65 fail against USM Miller in his individual capacity. Likewise, Plaintiff's constitutional claims against USM Miller in count 64 also fail to state a claim for relief because the amended complaint is devoid of any plausible allegations suggesting that USM Miller violated any clearly established constitutional rights. USM Miller is therefore entitled to qualified immunity from civil liability as to Plaintiff's claims against him in his individual capacity.

Plaintiff has been afforded more than a sufficient opportunity to state a claim for relief against USM Miller in his individual capacity, but has failed to do so. Accordingly, USM Miller's motion to dismiss should be granted and Plaintiff's claims against USM Miller in his individual capacity should

be dismissed for failure to state a claim upon which relief may be granted.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Individual Defendant Glenn Miller's Motion to Dismiss, ECF No. 86, should be **GRANTED**.

**IN CHAMBERS** this 1st  day of August, 2016.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**