IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

VERSIAH MANGEL TAYLOR,

      Plaintiff,

v.                                                 CASE NO. 5:14-cv-96-RH-GRJ

CHRISTOPHER PEKEROL, et al.,

      Defendants.

_____/

## **REPORT AND RECOMMENDATION**

      This matter is before the Court on ECF No. 88, the Motion to Dismiss

Filed on Behalf of Defendants United States and IRS Special Agents

Christopher Pekerol and Margaret Weiss. Plaintiff has filed a response in

opposition. (ECF No. 96.) The motion to dismiss is, therefore, ripe for

review. For the reasons explained below, it is recommended that

Defendants' motion to dismiss be granted in part and denied in part.

## I.  INTRODUCTION

      Plaintiff, an inmate incarcerated by the Federal Bureau of Prisons,

initiated this case on April 10, 2014, by filing a *pro se* complaint under 42

U.S.C. § 1983, asserting claims against six IRS agents. (ECF No. 1.) On

May 14, 2014, the Court *sua sponte* dismissed the case without prejudice

for failure to state a claim. (ECF Nos. 8–9.) The Court also found that any attempt to amend the complaint would have been futile because Plaintiff's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994),[1] and exceptions to 26 U.S.C. §§ 6103(k)(1) and 7431(b)(1) applied to the IRS agents' alleged conduct. (*Id.*) Plaintiff subsequently filed a motion to amend, which was denied, followed by an appeal to the Eleventh Circuit. (ECF Nos. 10–11.)

On appeal, the Eleventh Circuit determined that *Heck* "does not bar a section 7431 wrongful-disclosure suit because winning a section 7431 suit would not necessarily imply the invalidity of [the plaintiff's] convictions." (ECF No. 51 at 3.)[2]  Further, the Eleventh Circuit concluded that Plaintiff's allegations, taken as true, that IRS agents disclosed Plaintiff's return information to a news reporter, various criminal suspects, and various other non-law-enforcement third parties might not be justified by the exceptions in section 6103 if the disclosures did not fall within the bounds of applicable IRS regulations. (*Id.* at 7–8.) The Eleventh Circuit recognized,

---

[1] Under *Heck*, a prisoner may not bring a civil suit for damages if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." 512 U.S. at 487.

[2] The court explained that there is no exclusionary remedy for §§ 6103 and 7431 violations. *Id.* Further, exclusion is not a remedy under section 6103 or section 7431 for purposes of a redetermination of deficiencies in tax liability. *Id.* at 3–4.

however, that "it is unlikely that Taylor could raise a plausible claim based on disclosures to other federal law enforcement officers involved in his criminal investigation, any judge, or a grand jury." (*Id.* at 7.) Accordingly, the Eleventh Circuit vacated this Court's order dismissing Plaintiff's case, and remanded the case to this Court to allow Plaintiff an opportunity to amend his complaint. (*Id.* at 10.)

Upon remand, Plaintiff filed a first amended complaint and second amended complaint on October 19, 2015, and November 20, 2015, respectively. (ECF Nos. 56, 65.)  Plaintiff then filed a third amended complaint on January 21, 2016. (ECF No. 80.) The Third Amended Complaint is the focus of the motion to dismiss.

In Plaintiff's third amended complaint ("Amended Complaint") he asserts sixty-nine (69) claims against four defendants: (1) the United States of America; (2) Agent Christopher Pekerol, Internal Revenue Service; (3) Agent Margaret Weiss, Internal Revenue Service; and (4) United States Marshal Glenn Miller.[3] Plaintiff's allegations stem from the United States' criminal investigation of Plaintiff for filing fraudulent federal

---

[3] Separating the claims into 69 separate claims was excessive and unreasonable, especially in light of the fact that many of the claims are practically identical to other claims except for the specific third-party's name. Plaintiff easily could have grouped individuals together under several claims and nonetheless sought damages for each specific disclosure.

income tax returns, as well as Plaintiff's subsequent indictment and arrest. (*Id.*)

Counts 1–59, 61–63, and 65–68 are asserted against the United States under 26 U.S.C. § 7431 and allege that the federal agents unlawfully disclosed Plaintiff's return information. Counts 60 and 69 purport to allege constitutional claims against Defendants Pekerol and Weiss under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[4]

## II.  BACKGROUND & ALLEGATIONS[5]

On February 5, 2014, a federal jury found Plaintiff guilty of forty-five various counts related to Plaintiff's scheme of filing fraudulent federal

---

[4] The instant motion to dismiss does not address count 64, which asserts a constitutional claim against Defendant Miller in his individual capacity. Defendant Miller has filed a separate motion to dismiss based on claims asserted against him in his individual capacity. *See* ECF No. 86. The Court has addressed this motion to dismiss in a separate report and recommendation. ECF No. 106.

[5] In addition to Plaintiff's allegations, the Court may take judicial notice of the public filings in the criminal proceedings against Plaintiff and Plaintiff's subsequent petition for writ of habeas corpus "without converting the motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (noting that the district court "properly took judicial notice" of documents filed in another case because such documents "were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned'"). Plaintiff, in his response, also refers the Court to exhibits regarding his state and federal case, which were filed in *Taylor v. Taylor*, No. 1:15-cv-00761-SLB-JHE (N.D. Ala.). (ECF No. 95 at 4.) Accordingly, various background facts obtained from public court filings are also included to present a more comprehensive picture and subsequent analysis.

income tax returns on behalf of himself and others.[6] Defendants Pekerol
and Weiss headed the fraud investigation, which led to Plaintiff's
conviction. The following relevant events occurred during their
investigation.

### The Office Search

Federal agents found traces of fraudulent tax activity on the Steele
Boys Bail Bonds WiFi, which was open to business owner tenants and
other password users. Agents Pekerol and Weiss obtained the IP address
registered to Steele Boys Bail Bonds Plaza, where Plaintiff leased office
space, and from which he filed his personal tax return. Thereafter, Agent
Weiss subpoenaed content from Turbo Tax Intuit that had been transmitted
to Turbo Tax from Steele Boys Plaza's WiFi IP address 22.214.160.86.[7]
The subpoenaed information included a six-page Turbo Tax printout, which
disclosed Plaintiff's tax return information, including his name, social
security number, address, email address, phone number, and wages.
Agent Weiss confirmed Plaintiff's reported wages, address, and
employment information by submitting Plaintiff's tax return to the Social

---

[6] *See United States v. Versiah M. Taylor*, No. 5:13-cr-13-MW, ECF No. 148 (N.D.
Fla. Feb. 5, 2014).

[7] Count 1.

Security Administration ("SSA").

Afterwards, according to Plaintiff, Agent Pekerol fabricated probable cause in an application for a search warrant of the Steele Boys' office by falsely representing that there was no WiFi at the Steele Boys Plaza so the internet was only accessible via cable from the Steele Boys' office. Plaintiff says Agent Pekerol also falsely represented that Masheka Steele, a suspect in an unrelated investigation, was the daughter of Jerry Steele—the owner of Steele Boys Plaza.  Plaintiff alleges that these representations caused the magistrate judge to believe that Masheka Steele and Mr. Steele shared the same residence. Upon this information and belief, the magistrate judge issued a search warrant for the Steele Boys' office.

The search warrant was executed at the Steele Boys' office on May 1, 2012. During the execution of the search warrant Plaintiff says the agents exceeded the scope of the search warrant by blocking the entry and exit doors of Plaintiff's business. The agents also questioned clients and potential customers, making it appear as if Plaintiff was operating an illegal business that had been shut down.

Agent Pekerol also conducted a visual search and then falsely stated in a search warrant affidavit that he read a bankruptcy form on Plaintiff's

desk that was consistent with the crimes being investigated. The agents then obtained an additional warrant to search Plaintiff's office, during which, the agents unlawfully seized various documents.[8]

Plaintiff alleges that IRS Agents and local law enforcement officers conspired to discriminate against African American business owners at the Steele Boys Plaza, with the intent to deprive them of their Fourth and Fifth Amendment rights.[9]

### *Disclosures During the Investigation*

Plaintiff alleges throughout the course of the investigation, Agents Pekerol and Weiss unlawfully disclosed Plaintiff's confidential tax return information. First, Agent Weiss allegedly disclosed the tax return information subpoenaed from Turbo Tax to six other IRS Special Agents.[10] Then— although none of the IRS agents were assigned to the Inspection

---

[8] The seized documents consisted of confidential and personal mail, a bankruptcy form, a 1099 form from Plaintiff's former employer, Plaintiff's Pell Grant records, Plaintiff's reentry and Panhandle Express business plans, BP oil spill records, records created in Plaintiff's individual capacity, Plaintiff's buy order for a Ford F-150, Plaintiff's buy order for a Chevrolet Impala, Plaintiff's buy order for Chevrolet Corvette, Plaintiff's bank records, Plaintiff's IRS tax levy records, Panhandle Express forms, Pro Se Networking Assistance forms, and confidential client records.

[9] (Count 69).

[10] Defendant Pekerol (count 2); Wendy Kilpatrick (count 3); Candace Kowal (count 4); Joe Schuetz (count 5); Alfredo Vasquez (count 6); and Tanya Burgess (count 7).

Division—Plaintiff alleges the agents were allowed to inspect, possess, and re-disclose Plaintiff's return information during the criminal investigation of Plaintiff.

Plaintiff generally alleges that throughout the course of their investigation, the IRS agents disclosed to various suspects and third-party individuals that Plaintiff was the target of a tax fraud investigation.[11] The IRS agents also allegedly disclosed Plaintiff's tax return information to two of Plaintiff's potential clients, a Channel 13 news reporter, and various suspects.[12] The agents further disclosed Plaintiff's tax return information to and allowed inspection of the Turbo Tax report by various suspects,[13] individuals associated with Steel Boys Bail Bonds,[14] third-party

---

[11] Suspect John Minor (count 46); Suspect Jeremy Hart (count 47); Suspect Stephen Lee (count 48); Suspect Kevin Bartley (count 49); Suspect Bennie Hunter (count 50); Suspect Isaac Peterson (count 51); Interviewee David Payne (count 52); Shanel Roulhac (count 36); Joyce Brantley and Joshua Hall (count 37); and Joseph Jankowski (count 56); Bobby Stallworth (count 58); and former employer Daniel Marlow (count 61).

[12] Potential client Roxanne McNeil (count 28); Potential client Ms. Davina (count 29); Channel 13 news reporter (count 34); Suspect Randall Coon (count 39); Suspect Jeremy Nelson (count 40); and Suspect Nicholas Harris (count 41); and Suspect Gary L. Moore (count 57).

[13] Masheka Steele (count 8); Anthony Atkinson (count 9); Anthony Smith (count 10); Tia Martin (count 11); Roderick Standley (count 12); Melanie Holmes (count 13); Michael McNair (count 14); and John Fagin (count 15).

[14] Jerry Steele (count 16); Sandra Wright (count 17); Raymond Tatum (count 18); Vicky Burkett (count 19); and Phylis K. Harmon (count 20).

individuals,[15] and federal and state officials and confidential sources.[16]

Additionally, Plaintiff alleges that Agents Pekerol and Weiss disclosed the information seized from Plaintiff's office during the second search, as well as informing suspect Tracy Collier that Plaintiff was the target of a tax fraud investigation.[17] Later, Plaintiff says the agents disclosed the information seized from Plaintiff's office to interviewee Devon Collier.[18] One of the other IRS agents allegedly also disclosed the information seized from Plaintiff's office and Plaintiff's tax return information to Phylis K. Harmon, and told Ms. Harmon that Plaintiff was the target of a tax fraud investigation.[19]  Plaintiff also alleges that Agents Pekerol and Weiss disclosed the information seized from Plaintiff's office, along with Plaintiff's return information to Joshua Hall during questioning.[20]

According to Plaintiff, on July 25, 2012, Agents Pekerol and Weiss

---

[15] Shanelvalyn Roulhac (count 21);Tabora Lafrance (count 22); Ms. Jazmine (count 23); Azsia Jackson (count 24); Ms. Helen (count 25); Robbie Curry (count 26); an unknown employee of All in the Cut (count 27); and Joey Dixon (count 43).

[16] A DEA agent (count 30); Defendant Miller (count 31); United States Prosecutor Risinger (count 32); and various law enforcement officers and confidential sources (count 33).

[17] (Count 53).

[18] (Count 66).

[19] (Count 35).

[20] (Count 38).

informed Florida Department of Corrections Inspector Benjamin Smith ("Inspector Smith") that Plaintiff's business advertisements were targets of items used to solicit personal identifying information from inmates.[21] Inspector Smith subsequently distributed a memorandum, which Plaintiff says destroyed his business. Then, on August 14, 2012, Agents Pekerol and Weiss disclosed to Inspector Smith that Plaintiff was a suspect for fraudulent returns filed in the names of six inmates.[22] That same day, Agents Pekerol and Weiss received documents from Inspector Smith that related to prior prison tax fraud investigations involving Plaintiff from 2011 and earlier, which Plaintiff alleges, were prohibited from being re-disclosed.[23]

On September 7, 2012, Alabama state authorities arrested Plaintiff in Alabama for trafficking cocaine.[24] Agents Pekerol and Weiss learned from Phylis K. Harmon that Plaintiff had been arrested in Alabama.[25]

On September 12, 2012, Agents Pekerol and Weiss received follow-up information about suspects in an unrelated investigation, which

---

[21] (Count 42).

[22] (Count 45).

[23] (Count 44).

[24] *Taylor*, No. 1:15-cv-00761-SLB-JHE, Doc. 5, Ex. A.

[25] (Count 55).

suggested a connection between Plaintiff and the suspects.[26] This resulted from the initial disclosure to Mr. Steele that Plaintiff was the target of a prison tax fraud scheme. Several days later, Agents Pekerol and Weiss disclosed information to and solicited information from Mr. Steele related to rumors about items seized from Plaintiff's office connected to the unrelated suspects.[27] Plaintiff says that this was an attempt to build a conspiracy.

Sometime between September 12, 2012, and November 6, 2012, Agents Pekerol and Weiss contacted Henry County District Judge Peterson, Henry County and City of Abbeyville Police, District Attorney Doug Valeska ("Mr. Valeska"), and the Clerk of the Henry County Courthouse, and falsely represented that Plaintiff was wanted by the DEA, ATF, and IRS for "embezzling millions of dollars in tax fraud through his business and was a well known armed trafficker." (ECF No. 80 at 19.) Plaintiff claims this contact unlawfully disclosed his tax return information to these individuals and entities.[28] This representation led the officials to believe they had apprehended a notorious criminal, who had been eluding law enforcement.  Plaintiff alleges that Agents Pekerol and Weiss

---

[26] (Count 54).

[27] (Count 62).

[28] (Count 59).

disclosed Plaintiff's return information again on November 6, 2012, when they stated in open court that Plaintiff was the target of a tax fraud investigation.

Plaintiff was arrested on federal charges on March 25, 2013.[29] Following his arrest, Deputy United States Marshal Miller informed Mr. Valeska that Plaintiff had been arrested for tax fraud.[30]  Plaintiff says taht USM Miller did so in an attempt to have Mr. Valeska influence Judge Peterson to revoke Plaintiff's state court bail and impose a detainer against Plaintiff so the federal court would deny Plaintiff pretrial release. USM Miller also informed Alabama bail bond agents of Plaintiff's arrest so the bail bond agents would request that Plaintiff's state bond be revoked.[31]

Approximately eight months after Plaintiff's arrest, Agents Pekerol and Weiss disclosed to two individuals a rental lease agreement from Plaintiff's office, bail bond records, Western Union records, and bank loan records bearing co-signer personal identifying information and documents protected by bond Boyd principle.[32] The documents were then used to question the individuals about Plaintiff's personal and business liabilities in

---

[29] *See United States v. Taylor*, No. 5:13-cr-13-MW, Doc. 14 (N.D. Fla.).

[30] (Count 63).

[31] (Count 65).

[32] Joshua Hall (count 67); and Kingston Murphy (count 68).

relation to the prison tax fraud investigation.

Plaintiff claims all of theses disclosures were unlawful, unauthorized, unnecessary, caused him unwarranted embarrassment, and harmed his reputation and business. He alleges that the unlawful disclosures violated his statutory confidentiality provided by 26 U.S.C. § 6103. Accordingly, Plaintiff seeks statutory damages under 26 U.S.C. § 7431, for each unlawful disclosure.

### *Alabama State Detention*

Plaintiff alleges that on September 12, 2012, Agents Pekerol and Weiss conspired to influence the Alabama State officials to detain Plaintiff until both agents arrived in Abbeyville, Alabama.[33] Specifically, Plaintiff alleges that Agents Pekerol and Weiss informed the officials that Plaintiff was wanted for embezzling millions of dollars through his business in tax fraud, was a well-known armed trafficker, and had been eluding federal agents.[34] Plaintiff's bail was set at $250,000, which Plaintiff claimed constituted excessive bail.

On October 16, 2012, a bond hearing was held to consider Plaintiff's

---

[33] (Count 60).

[34] At the time, however, no federal indictment or arrest warrant had been issued. Plaintiff says he was not eluding federal agents because he specifically contacted Agents Pekerol and Weiss on May 9, 2012, and May 11, 2012, to coordinate interviews and openly invited the agents to meet with Plaintiff at his office.

claim of excessive bail. Judge Peterson stated that he spoke with Agents Pekerol and Weiss via phone, who asked that the court hold Plaintiff until they arrived. Agents Pekerol and Weiss, however, never arrived. The Alabama court then reduced Plaintiff's bail to $175,000.

Plaintiff's state court bail remained at $175,000 until December 6, 2012, when Agents Pekerol and Weiss arrived and Mr. Valeska concluded that their allegations about Plaintiff were false. Plaintiff's bail was then reduced below $150,000. Plaintiff subsequently posted bond. Plaintiff says the time he was detained in jail destroyed his business, Ready Rent, LLC, which was Plaintiff's source of income.

Plaintiff concludes that the conspiracy engaged in by Agents Pekerol and Weiss' violated Plaintiff's rights under 42 U.S.C. § 1985, as well as his rights under the Fourth, Fifth, and Eighth Amendments.  Plaintiff seeks compensatory and punitive damages for the constitutional violations.

## III.  STANDARD OF REVIEW

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Further, in *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 1951–53 (2009), the Supreme Court stated that

*Twombly* "expounded the pleading standard for all civil actions," and

conclusory allegations that "amount to nothing more than a formulaic

recitation of the elements of a constitutional . . . claim" are "not entitled to

be assumed true," and, to escape dismissal, complaint must allege facts

sufficient to move claims "across the line from conceivable to plausible."

    For the purposes of a motion to dismiss, the Court must view the

allegations of the complaint in the light most favorable to plaintiff, consider

the allegations of the complaint as true, and accept all reasonable

inferences therefrom. *See, e.g.*, *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d

1532, 1534 (11th Cir. 1994)). While a *pro se* litigant's allegations are

entitled to the benefit of liberal construction, *Haines v. Kerner*, 404 U.S.

519, 520 (1972), a court does not, however, have "license . . . to rewrite an

otherwise deficient pleading [by a *pro se* litigant] in order to sustain an

action." *GJR Invs v. Cnty of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th

Cir. 1998) (overruled on other grounds by *Iqbal*, 556 U.S. 662).

    On a motion to dismiss, the Court ordinarily must limit its

consideration to the complaint and written instruments attached as

exhibits. *See U.S. ex rel. Osheroff v. Humana*, 776 F.3d 805, 811 (11th Cir.

2015). Nonetheless, "a district court may consider an extrinsic document

even on Rule 12(b)(6) review if it is (1) central to the [p]laintiff's claim, and (2) its authenticity is not challenged." *Id.* (noting that the records of plaintiff's underlying Florida Supreme Court case were plainly central to his claims and that plaintiff did not challenge the authenticity of the records). "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *Id.* n.4.

## IV.  DISCUSSION

In light of Plaintiff's 69 separate counts, Defendants' motion to dismiss raise a host of arguments. First, Defendants argue the constitutional claims against Agents Pekerol and Weiss in their official capacities should be dismissed because Congress has not waived sovereign immunity as to those claims. Second, Defendants argue that to the extent the unlawful disclosure claims are asserted as *Bivens* claims against Agents Pekerol and Weiss in their individual capacities, the claims should be dismissed because the comprehensive statutory scheme provided by the Internal Revenue Code ("IRC") renders a *Bivens* remedy unavailable. Third, Agents Pekerol and Weiss contend they are entitled to qualified immunity as to all constitutional claims asserted against them in their individual capacities. Fourth, Defendants argue Plaintiff has failed to state a claim under § 7431 for many of the counts that are based on the

alleged unlawful disclosure of Plaintiff's tax return information. (ECF No. 88.)  Defendants assert that 41 counts in Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted.[35]

### A.    Constitutional Claims

In counts 60 and 69 Plaintiff asserts *Bivens* claims against Defendants. In count 60, Plaintiff claims Agents Pekerol and Weiss' conspired to violate Plaintiff's rights in violation of section 1985, as well as the Fourth, Fifth, and Eighth Amendments. Similarly, in count 69, Plaintiff alleges IRS Agents and local law enforcement officers conspired to discriminate against African American business owners at the Steele Boys Plaza, to deprive them of their Fourth and Fifth Amendment rights.

Plaintiff does not make clear whether his claims in counts 60 and 69 are asserted against Agents Pekerol and Weiss in their individual capacities, their official capacities, or both.  To the extent Plaintiff attempts to bring *Bivens* claims against Defendants in their official capacities Defendants argue that sovereign immunity bars these claims. Similarly, to

---

[35] The 41 counts at issue are counts 1–7, 28–34, 36–37, 39–42, 44–52, 54–63, 65, and 69. Count 64 is asserted only against Defendant Miller in his individual capacity and was addressed by separate motion, ECF No. 86, and resolved the Court in a separate report and recommendation.

the extent Plaintiff attempts to bring claims against Agents Pekerol and

Weiss in their individual capacity, the claims are barred because the IRC

provides a remedial scheme and because Defendants are entitled to

qualified immunity.

### 1.   *Sovereign Immunity*

Plaintiff's *Bivens* claims against the Agents Pekerol and Weiss in

their official capacities are barred by sovereign immunity. The principle of

sovereign immunity derives from the Eleventh Amendment. *See* U.S.

Const. amend. XI. Sovereign immunity prohibits a state or one of its

agencies or departments from being sued in federal court unless the state

consents. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994);

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A

suit against IRS employees in their official capacities is, in essence, a suit

against the United States. *See, e.g., Rosado v. Curtis*, 885 F. Supp. 1538,

1542 (M.D. Fla. 1995), *aff'd*, 84 F.3d 437 (11th Cir. 1996); *Bevan v. Steele*,

417 F. App'x 840, 841 n.3 (11th Cir. 2011) (*Bivens* claims against federal

officers in their official capacities are barred by sovereign immunity).

Plaintiff's allegation that Agents Pekerol and Weiss—in their official

capacities—conspired to discriminate against African American business

owners at the Steele Boys Plaza, is in essence, a suit against the United

States. Despite Plaintiff's argument that the United States has waived its sovereign immunity under 28 U.S.C. § 2680, the United States has not waived its sovereign immunity for constitutional claims. 28 U.S.C. Ch. 171 sets forth the Federal Tort Claims Procedure. Under the Federal Tort Claims Act ("FTCA"), the United Stats can be liable in certain circumstances unless an exception under § 2680 applies. Plaintiff's argument that § 2680 waives the United States' sovereign immunity is wrong.

Moreover, to the extent Plaintiff argues that the United States has waived it's sovereign immunity under the FTCA, Plaintiff misundestands this principle.

> The [FTCA] . . . . prescribes a uniform procedure for handling of claims against the United States, for money only, on account of damage to or loss of property, or on account of personal injury or death, caused by the negligent or wrongful act or omission of a Government employee while acting within the scope of his or her office or employment, under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.

38 C.F.R. § 14.6000. The FTCA does not permit a plaintiff to bring a constitutional claim against federal officers in their official capacities—or against the United States. *See generally Carlson v. Green*, 446 U.S. 14 (1980) (explaining that the FTCA created a cause of action against the

United States for intentional torts committed by federal law enforcement officers, while a *Bivens* action may be asserted against the officers in their individual capacities for constitutional violations); *see also Komongnan v. U.S. Marshals Serv.,* 471 F. Supp. 2d 1, 4 (D.C. Cir. 2006) ("it is well-established that 'no cause of action for damages for constitutional violations—whether called a Bivens action or not—is to be implied against government agencies").

Sovereign immunity, therefore, protects the United States from suit for the alleged unconstitutional conduct of the IRS agents.  Accordingly, counts 60 and 60 asserted against the United States and Agents Pekerol and Weiss in their official capacities, must be dismissed

### 2.    *Qualified Immunity*

The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court first must consider whether Plaintiff's allegations, taken as true, demonstrate that Agents Pekerol and Weiss were acting within their discretionary duties during the conduct asserted in counts 60 and 69.

### a.   Discretionary Function

In determining whether a government official was performing a discretionary function, the court must consider "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting *In re Allen*, 106 F.3d 582, 593 (4th Cir. 1997)).

Taking Plaintiff's allegations as true, Agents Pekerol and Weiss were acting within the scope of their discretionary duties with respect to counts 60 and 69.  Plaintiff admits that Agents Pekerol and Weiss were IRS agents at all times relevant to the allegations. *See* ECF No. 80 at 2 (identifying Defendants Pekerol and Weiss as "Special Agents, IRS Criminal Division"). IRS agents are authorized to conduct criminal tax investigations. *See Taylor v. Pekerol*, 624 F. App'x 691, 694 (11th Cir. 2015) (quoting 26 U.S.C. § 6103(k)(6)) ("IRS officers 'may, in connection with their official duties relating to any . . . criminal tax investigation . . . .''). Thus, the conduct alleged in counts 60 and 69 involve actions taken by Agents Pekerol and Weiss' during their criminal investigation of Plaintiff.

As to count 60, Plaintiff argues that Agents Pekerol and Weiss' conduct was not within the scope of their discretionary duties because they

made false representations to the state judge and improperly requested the state court to hold Plaintiff until they arrived.[36]  Plaintiff misses the point of what is means to act within the scope of an agent's discretionary duties. The issue is not whether the duties of an IRS agent include making false representations and improperly requesting a court to hold a subject but rather whether IRS agents are permitted to contact relevant entities, inform them of a pending investigation, and ask them to hold the suspect until they arrive to question the suspect. *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (the question is not whether defendants, United States Marshals, could place plaintiff into unconstitutional conditions or improperly transfer him; instead, the question is whether defendants' duties included transporting and delivering prisoners). Surely, an IRS agent's duties include such as part of their investigation.[37]

Similarly, in count 69, the conduct of Agents Pekerol and Weiss included conducting surveillance, providing affidavits for search warrant

---

[36] In count 60, Plaintiff alleges that Agents Pekerol and Weiss contacted Judge Peterson, Mr. Valeska, local law enforcement, and the Henry County Clerk to inform them of their investigation following Plaintiff's state arrest and asked the court to hold Plaintiff until they arrived to question Plaintiff. Then, Agents Pekerol and Weiss went to Alabama to question Plaintiff.

[37] In addition, to the extent Plaintiff claims the IRS agents were not permitted to do so because such conduct constituted unlawful disclosures in violation of section 6103, the question is not whether IRS agents could make unlawful disclosures. Furthermore, the IRS agents were allowed to make such disclosures as discussed *infra*.

applications, executing search warrants, and seizing documents during the search.  The duties of IRS agents expressly include investigating alleged criminal violations and executing search warrants. *See* 26 U.S.C. § 7608(b).  Thus, notwithstanding Plaintiff's claims that the agents did not act within the scope of their discretionary duties because the affidavit contained false information, the agents exceeded the scope of the search warrant, and the agents unlawfully seized documents, the duties carried out by the agents was well within their authority to investigate, provide affidavits, execute warrants, and seize documents. *See Jordan*, 38 F.3d 1559.  Consequently, the agents were acting within their authority under section 7608(b).

Plaintiff also argues in his response that Defendants were not permitted to subpoena the tax returns from Turbo Tax because the IRS is prohibited from issuing a summons to further an IRS criminal investigation. This argument confuses the issuance of a summons from the use of a subpoena to obtain information during a criminal investigation.

A summons under § 26 U.S.C. § 7602 can be used for conducting an examination of a taxpayer's tax return and cannot be used in good faith to gather evidence solely for a criminal investigation. *See* § 7602(d)(1); *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 315–18 (1978). Further,

an IRS summons is issued before the IRS recommends to the Department of Justice that a criminal prosecution should be undertaken. *Id.* at 318.[38]

On the other hand, a subpoena is used to gather information as part of a criminal investigation. "[G]rand jury subpoenas are issued as a matter of course by the Department of Justice, not by the grand jury." *United States v. Friedman*, 532 F.2d 928, 932 n.9 (3d Cir. 1976) (citing *In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973)). There are no notice requirements regarding grand jury subpoenas.

In the Amended Complaint Plaintiff alleges that  Agent Weiss, a criminal investigator, *subpoenaed* the information from Turbo Tax after discovering traces of fraudulent activity on the Steele Boys Bail Bonds WiFi. (ECF No. 80 at 7, 24.)[39]  There are no allegations in the Amended Complaint that Agent Weiss used a summons to obtain information for the criminal investigation of Plaintiff.  Accordingly, the notice requirements for a summons under section 7602 do not apply.[40] The fact that the information

---

[38] "A Justice Department referral is in effect with respect to any person if . . . the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws . . . ." § 7602(d)(2)(A)(I).

[39] Plaintiff also states in his response, "[a]s to Count 69, the Defendants Pekerol and Weiss concede that the investigation was solely criminal when it subpoenaed the tax returns from Turbo Tax . . . ." (ECF No. 96 at 6.)

[40] As Defendants point out, even if Defendant Weiss had issued a summons in connection with a civil investigation of Plaintiff, the notice provision would not apply to

was subpoenaed from Turbo Tax also explains why Plaintiff has not seen

an affidavit attached to a summons application. Accordingly, because there

is no issue that Agents Pekerol and Weiss subpoenaed the tax returns as

part of a criminal investigation—and did not obtain the information from

Turbo Tax pursuant to a summons—there is no question that Agents

Pekerol and Weiss were acting within their discretionary authority as IRS

agents engaged in a criminal investigation during the conduct alleged in

counts 60 and 69.

After a defendant establishes that he or she was acting within his or

her discretionary authority, the burden shifts to the plaintiff to show that

qualified immunity is not appropriate. *Dalrympie v. Reno*, 334 F.3d 991,

995 (11th Cir. 2003); *Harbert*, 157 F.3d at 1284. The burden, therefore,

shifts to Plaintiff to show qualified immunity is not appropriate.

### b. Clearly Established Statutory or Constitutional Rights

To determine whether qualified immunity applies, a court must

consider two factors: (1) whether the factual allegations show that the

officer's conduct violated a constitutional right; and (2) whether the right

―――――――――――――――

the summons. *See* § 7609(c)(2)(E)(I); *see also United States v. First Nat. Bank of Atlanta*, 628 F.2d 871, 874 (11th Cir. 1980) ("The IRS may vigorously pursue [a] criminal investigation with all legal tools [including a summons] without abandoning the civil investigatory purpose.").

was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

### i.     Count 60

In count 60, Plaintiff claims Agents Pekerol and Weiss conspired to violate Plaintiff's Fourth, Fifth, and Eighth Amendment rights by contacting Alabama state officials, including the judge presiding over Plaintiff's bail hearing for the purpose of detaining Plaintiff until the agents arrived in Alabama.  Count 60 fails to plausibly state a claim under either the Fourth, Fifth, or Eighth Amendment.

As a starting point, Count 60 is completely devoid of any suggestion as to how Agents Pekerol and Weiss violated—or could have violated—Plaintiff's Fourth or Fifth Amendment rights with respect to his state court arrest and detention.  Agents Perkerol and Weiss had no authority to detain or arrest Plaintiff in the Alabama state drug case.  In the absence of any facts suggesting how Plaintiff's Fourth and Fifth Amendment rights were violated these claims in count 60 of the Amended Complaint must be dismissed.

Plaintiff also has failed to state a plausible Eighth Amendment claim. The Eighth Amendment provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Alabama vests judicial officers with the exclusive

authority to enhance or reduce bail. *See* Ala. Code. § 12-22-222(b)

(explaining that the judge or court directs "the clerk of court in which

conviction was had to admit the defendant to bail in a sum which may be

prescribed by the court"); Ala. R. Crim. P. 7.2 ( judges of the state courts

are responsible for and have the authority to set and reduce bond or bail).

Agents Pekerol and Weiss— federal agents—had absolutely no authority

to set Plaintiff's state bail.

Thus, to establish that Agents Pekerol and Weiss violated Plaintiff's

Eighth Amendment right, Plaintiff must demonstrate that Defendants'

conduct was the actual or proximate cause of Plaintiff's bail enhancement.

*See Bey v. Abrams*, No. 7:14-cv-02205-RDP, 2015 WL 3839908, at *11

(N.D. Ala. June 22, 2015) (citing *Jackson v. Sauls*, 206 F.3d 1156, 1168

(11th Cir. 2000)); *see also Galen v. Cnty. of Los Angeles*, 477 F.3d 652,

663 (9th Cir. 2007) ("Pursuant to traditional tort law principles of causation,

which we apply to § 1983 claims, . . . a judicial officer's exercise of

independent judgment in the course of his official duties is a superseding

cause that breaks the chain of causation linking law enforcement

personnel to the officer's decision . . . ."). Plaintiff does not alleged in the

Amended Complaint that Agents Pekerol and Weiss prevented Judge

Peterson from exercising his independent judgment in imposing bail. Even

assuming that Defendants recommended that Judge Peterson hold Plaintiff, as Plaintiff alleges, do not plausibly suggest that Judge Peterson failed to exercise his independent judgment.

Moreover, Plaintiff's assertion that $250,000 is excessive is nothing more than conclusory. Under Alabama law bail the recommended range for bail on a charge of drug trafficking is between $5,000 and $1,500,000. *See* Ala. R. Crim. P. 7.2(b). "[T]he test for excessiveness is whether the terms of release are designed to ensure a compelling interest of the government, and no more." *Campbell v. Johnson*, 586 F.3d 835, 843 (11th Cir. 2009) (citing *United States v. Salerno,* 481 U.S. 739, 753–54 (1987)). Even liberally construed, Plaintiff's allegations do not plausibly suggest that $250,000 was not reasonably necessary to ensure his presence.

Moreover, Plaintiff's claim that Alabama bail bond agents will not post more than $150,000, is irrelevant to whether bail is "excessive." Merely because a detainee is unable to post bond does not render the amount excessive. *See Campbell*, 586 F.3d at 842 ("Although the Excessive Bail Clause does not guarantee a right to bail, it does guarantee that any bail imposed 'not be excessive in light of the perceived evil.'"); *United States v. Ramirez*, No. 09-20295-CR, 2010 WL 1911355, at *7 (S.D. Fla. May 12, 2010) ("It is well settled in this Circuit that the court can insist on a financial

condition of release, even if the defendant is unable to meet this condition, if the court finds that it is reasonably necessary to insure the defendant's presence."). Plaintiff has failed to set forth sufficient factual allegations suggesting that excessive bail was imposed or that Agents Pekerol and Weiss were responsible for imposing the bail.  Therefore, Plaintiff's Eight Amendment claim in count 60 should be dismissed for failure to state a claim.

Alternatively, even if Plaintiff had plausibly alleged that his state bail was excessive under the Eighth Amendment, Agents Pekerol and Weiss are entitled to qualified immunity because Plaintiff has failed to allege facts that show Agents Pekerol and Weiss violated a clearly established constitutional right.  Making false representations, and requesting a court to detain Plaintiff—even if true—do not rise to the level of demonstrating that Defendants violated clearly established constitutional rights. Agents Pekerol and Weiss, therefore, are entitled to qualified immunity on count 60.

### ii.    Count 69

In count 69, Plaintiff alleges that Agents Pekerol and Weiss conspired to violate Plaintiff's Fourth and Fifth Amendment rights. The factual allegations, however, do not show that Defendants' conduct

violated Plaintiff's clearly established constitutional rights.

The Fourth Amendment prohibits unreasonable searches and seizures and provides that no warrants shall be issued absent probable cause. U.S. Const. amend. IV. To demonstrate that a warrant affidavit is so defective as to support a Fourth Amendment claim, a plaintiff must establish "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Meeks v. Larsen*, 611 F. App'x 277, 283 (6th Cir. 2015). "[T]he warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause." *Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978)).

Plaintiff says Agent Pekerol made two false representations in his search warrant affidavit: (1) there was no WiFi at the Steele Boys Plaza and the internet was only accessible via cable from the Steele Boys Bail Bonds office; and (2) Masheka Steele, a suspect in an unrelated investigation, was the daughter of the owner of Steele Boys Bail Bonds, Jerry Steele. According to Plaintiff, the plaza had WiFi, which was accessible to other business owners and password users, and Agents

Pekerol and Weiss engaged in surveillance of the Steele Boys Plaza via a WiFi detection device. Plaintiff also claims Agent Pekerol obtained the information about Masheka Steele from a local law enforcement officer. The information allegedly led the magistrate judge to believe the Steeles shared a residence and that Masheka Steele had access to the Steele Boys' office.

Plaintiff has not stated a valid Fourth Amendment claim against Defendant Pekerol. A search warrant may give rise to a Fourth Amendment violation if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009). The false or reckless information, however, must be material to the issuance of the search warrant. *Franks*, 438 U.S. at 155–56; *Kapordelis*, 569 F.3d at 1309.

The problem is that Plaintiff does not allege or suggest how the false representations were material to the issuance of the search warrant. The fact an affidavit in support of a search warrant contains some false information does not by itself give rise to a Fourth Amendment claim. *Estate of Redd v. Love*, 62 F. Supp. 3d 1268, 1274 (D. Utah 2014). Moreover, "[a]ffidavits supporting arrest warrants are presumptively valid."

*Kapordelis*, 569 F.3d at 1309 (citing *Franks*, 438 U.S. at 171)). Because Plaintiff has not alleged that the false information was material to the finding of probable cause, the affidavit is presumed to be valid. Accordingly, Plaintiff has failed to allege a plausible claim that Agent Pekerol violated a clearly established right with respect to the first search warrant.

Plaintiff has also failed to allege a plausible claim that Agent Pekerol violated Plaintiff's Fourth Amendment rights with respect to the second search warrant. Plaintiff alleges that during the execution of the first search warrant, Agent Pekerol conducted a visual search of Plaintiff's office. Plaintiff says Agent Pekerol then "falsely represented in a search warrant affidavit that he read a bankruptcy form on Plaintiff's desk consistent with the crimes he was investigating," and obtained a second search warrant to search Plaintiff's office. (ECF No. 80 at 25.)  Plaintiff's amended complaint contains no factual allegations even suggesting how or why this representation was false.

Furthermore, as with the initial search warrant affidavit, Plaintiff has failed to establish that the allegedly false representation in the second affidavit was material to the finding of probable cause. Plaintiff therefore has failed to allege a plausible claim that Agent Pekerol's search warrant

affidavits violated Plaintiff's clearly established Fourth Amendment rights.

Likewise, to the extent Plaintiff alleges IRS agents conducted unlawful surveillance, exceeded the scope of the search warrant, and unlawfully seized non-responsive documents, Plaintiff fails to demonstrate that Agents Pekerol and Weiss violated Plaintiff's clearly established constitutional rights. Plaintiff conclusorily alleges that Agents Pekerol and Weiss conducted an unauthorized electronic surveillance at the Steele Boys Plaza using a WiFi detection device. The problem of course is that Plaintiff does not allege or suggest how or why the electronic surveillance was unlawful under the Fourth Amendment.

For Fourth Amendment protections to apply, the person must have a reasonable expectation of privacy in the place searched or the items seized. *Katz v. United States*, 389 U.S. 347, 353 (1967); *Rehberg v. Paulk*, 611 F.3d 828, 842 (11th Cir. 2010). "[E]mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit . . . ." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007). Internet surveillance is, therefore, not a search within the meaning of the Fourth Amendment. *Id.* at 511; *Rehberg*, 611 F.3d at 843–44, 847.

In his response, Plaintiff compares the surveillance in this case with

*Florida v. Jardines*, 569 U.S. 1409 (2013), and *Kyllo v. United States*, 533 U.S. 27 (2001).  Neither *Jardines* nor *Kyllo* are informative in this case. In *Jardines*, a dog-sniff on the front porch of a defendant home was deemed a search within the meaning of the Fourth Amendment. 569 U.S. at 1417–18. Similarly, *Kyllo* held that the use of sense-enhancing technology to gather information from the interior of a home that cannot otherwise be obtained without physical intrusion constitutes a search under the Fourth Amendment. 533 U.S. at 40. The search in Plaintiff's case is nothing like *Jardines* or *Kyllo*.  The electronic surveillance was not of Plaintiff's home where he maintained an expectation of privacy, nor was the electronic surveillance of the WiFi activity a sense-enhancing technology. Accordingly, Plaintiff has failed to allege a plausible claim that the IRS agents violated the Fourth Amendment by conducting electronic surveillance through use of the WiFi.

To the extent Plaintiff claims the IRS agents exceeded the scope of the search warrant, Plaintiff fails to present any factual allegations regarding the scope of the search warrant. "[T]he magnitude of a search is insufficient, by itself, to establish a constitutional violation; rather, the relevant inquiry is whether the search and seizures were reasonable under all the circumstances." *United States v. Wuagneux*, 683 F.2d 1343, 1352

(11th Cir. 1982); *United States v. Jenkins*, 901 F.2d 1075, 1082 (11th Cir. 1990) ("A search may be as extensive as reasonably necessary to locate the items described in the warrant.").

In this case, Plaintiff merely alleges that the IRS agents blocked the entry and exit doors, questioned potential clients, and made it look like Plaintiff's business was shut down. (ECF No. 80 at 25.) These actions during the execution of a search warrant, even if true, do not violate a clearly established constitutional right. Indeed, it is not uncommon or unlawful for agents to secure entry and exit doors and question individuals approaching the location while executing a search warrant. Thus, Plaintiff has not plausibly alleged that execution of the search warrant violated the Fourth Amendment.

Furthermore, Plaintiff's allegation that the IRS agents seized non-responsive documents that were ruled inadmissible at trial does not plausibly suggest that the agents violated Plaintiff's clearly established constitutional rights. The relevant inquiry in determining whether a search and seizure establishes a constitutional injury is whether the search and seizure were reasonable under the circumstances. *Wuagneux*, 683 F.2d at 1352. "The seizure of items not covered by a warrant does not automatically invalidate an otherwise valid search." *United States v.*

*Schandl*, 947 F.2d 462, 465 (11th Cir. 1991). "Courts have consistently held . . . that absent a 'flagrant disregard' of the terms of the warrant, the seizure of items outside the scope of a warrant will not affect admissibility of items properly seized." *Wuagneux*, 683 F.2d at 1354. Plaintiff does not suggest the scope of the second warrant or the items to be seized. Even assuming some of the items seized were non-responsive and inadmissible at trial, that alone does not rise to the level of a clearly established constitutional violation.  Accordingly, Agents Pekerol and Weiss are entitled to qualified immunity on Plaintiff's Fourth Amendment claim in count 69.

Turning to Plaintiff's claim in count 69 that Defendants engaged in selective enforcement in violation of the Fifth Amendment, Plaintiff fails to state a claim upon which relief may be granted. Selective enforcement claims against federal officers are analyzed under the equal protection clause of the Fifth Amendment. *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *United States v. Deering*, 179 F.3d 592, 594 (8th Cir. 1999). To establish a selective enforcement claim, the plaintiff must demonstrate "1) that he has been singled out for prosecution while other similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an

impermissible motive such as race, religion, or the exercise of

constitutional rights." *Id.* at 595 (quoting *United States v. Parham,* 16 F.3d

844, 846 (8th Cir. 1994).

Plaintiff does not make clear the basis of his selective enforcement

claim.  To the extent the claim is based on race, Plaintiff offers nothing

more than the conclusory allegation that IRS agents, DEA agents, and

local law enforcement discriminated against African American business

owners at the Steele Boys Plaza. Plaintiff does not allege that other

similarly situated individuals have not been prosecuted for similar conduct,

nor does he provide any factual allegations to explain how the disparate

treatment occurred. *See Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955,

974 (11th Cir. 2008) (dismissing claim where plaintiff failed to allege factual

support for the allegation that plaintiffs were denied and treated differently

from similarly situated white employees solely because of race)*; Veale v.

Fla. Dep't of Health*, No. 2:13-cv-77-Ftm-38UAM,  2013 WL 5703577, at

*45 (M.D. Fla. July 29, 2013) (granting motion to dismiss where plaintiff

failed to provide allegations of specific facts to explain how the disparate

treatment occurred). Plaintiff has not plausibly alleged that he was

subjected to selective enforcement based on his race.

Likewise, to the extent Plaintiff claims Agents Pekerol and Weiss

treated him differently from other business owners and taxpayers because

Defendants failed to notify Plaintiff that they had issued a summons to

Turbo Tax under 26 U.S.C. § 7609(b), Plaintiff's claim also fails. For the

reasons previously discussed, Defendants were not required to notify

Plaintiff because Plaintiff alleges a subpoena was issued, not a

summons.[41]

Plaintiff has not included any factual allegations with respect to

similarly situated individuals who were treated differently or more favorably.

Plaintiff's attempt to distinguish himself by merely claiming he was treated

---

[41] Even assuming, *arguendo*, Defendants had issued a summons to Turbo Tax, Defendants still would not be required to notify Plaintiff. Under section 7609(c)(2)(E), the summons would have been issued by an IRS criminal investigator in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and the summons was served on a person who is not a third-party recordkeeper as defined in 26 U.S.C. § 7603(b). Thus, anything issued was issued by Agent Weiss as part of a criminal investigation. In addition, Plaintiff does not allege that Turbo Tax was a third-party recordkeeper as defined in section 7603(b).

Further, assuming Agent Weiss had issued a summons and assuming the summons notice exception in section 7609(c)(2)(E) did not apply, Agent Weiss still would not be required to provide Plaintiff notice. The notice provision in section 7609(a)(1) states in relevant part,

> if any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code . . . . with respect to, any person (other than the person summoned) *who is identified in the summons*, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but not later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined.

(Emphasis added). Plaintiff alleges that the information sought was from Steele Boys Plaza's WiFi IP address 22.214.160.86. Plaintiff has not alleged that he was identified in the summons.

differently from other business owners and taxpayers fails to provide sufficient factual allegations to state a plausible claim for selective enforcement.  Plaintiff's selective enforcement claim, therefore, should be dismissed.

Finally, to the extent Plaintiff's Fifth Amendment claim is construed as asserting a straightforward due process violation, his claim also fails to state a claim for relief. Other than his selective enforcement allegations, Plaintiff has not alleged that he was denied either life, liberty, or property, nor has he suggested how such a denial was made without due process of law.

Because Plaintiff has failed to state a Fifth Amendment claim he cannot demonstrate that Agents Pekerol and Weiss violated any clearly established constitutional rights. In addition, Plaintiff's allegations demonstrate that Agents Pekerol and Weiss were acting within their discretionary authority at all relevant times. Consequently, Agents Pekerol and Weiss are entitled to qualified immunity with respect to the Fifth Amendment claim in count 69.

### 3.    *Conspiracy to Violate Constitutional Rights*

Plaintiff has failed to state a viable claim under 42 U.S.C. § 1985 for conspiracy to violate his constitutional rights. Under   section 1985(3),

> [i]f two or more persons . . . conspire . . . for the purpose of
> depriving, either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of equal
> privileges and immunities under the laws . . . the party so
> injured or deprived may have an action for the recovery of
> damages occasioned by such injury or deprivation, against any
> one or more of the conspirators.

To state a claim for conspiracy to violate constitutional rights, however, the plaintiff must show a conspiracy existed "that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citing *GJR Invs.*, 132 F.3d at 1370); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("the plaintiff must prove an actionable wrong to support the conspiracy").

As discussed, Plaintiff has failed to allege facts plausibly suggesting that Agents Pekerol and Weiss violated Plaintiff's constitutional rights. Without an actionable wrong, Plaintiff cannot sustain a conspiracy claim. Accordingly, Plaintiff's conspiracy claims in counts 60 and 69 should be dismissed for failure to state a claim.

## B.   Unlawful Disclosure

Excluding Plaintiff's constitutional claims, the remaining 66 counts in Plaintiff's complaint relate, in some manner, to the disclosure of his tax return information. At the outset, Plaintiff does not specify whether his unlawful disclosure claims are against the IRS agents in their official

capacities—and therefore, against the United States—or against the IRS agents in their individual capacities.[42] Nonetheless, to the extent the unlawful disclosure claims are asserted as *Bivens* claims against Agents Pekerol and Weiss in their individual capacities, Plaintiff's claims are barred because Congress has provided adequate statutory avenues for relief.

Generally, a *Bivens* action may be asserted "against a federal agent who, while acting under the color of federal law, has violated the constitutional rights of an individual," and where a statute does not provide a right of action. *Hardison v. Cohen*, 375 F.3d 1262, 1264 (11th Cir. 2004) (citing *Bivens*, 403 U.S. 388, 397 (1970)); *Al-Sharif v. United States*, 296 F. App'x 740, 741 (11th Cir. 2008). Under 26 U.S.C. § 6103(a), federal agents must keep tax return information confidential. Congress, however, has provided a statutory right of action for section 6103 violations, such as where a federal agent fails to keep tax return information confidential. *See* 26 U.S.C. § 7431. Pursuant to section 7431, a taxpayer may bring a civil action for damages against the United States "[i]f any officer or employee of the United States knowingly, or by reason of negligence, inspects or

---

[42] Two counts also assert unlawful disclosure by Defendant Miller, a United States Marshal.

discloses any return or return information with respect to [the] taxpayer in violation of any provision of section 6103."[43]

Despite section 7431's right of action for unlawful disclosure by a federal agent, the right of action is solely against the United States. Plaintiff may not bring a claim under section 7431 against Defendants in their individual capacities. Likewise, Plaintiff may not bring *Bivens* claims against Defendants in their individual capacities because Congress has provided a statutory right of action. As such, to the extent Plaintiff's unlawful disclosure claims are asserted against Agents Pekerol and Weiss in their individual capacities, Plaintiff's claims are barred and should be dismissed.

In general, Plaintiff alleges that IRS agents disclosed Plaintiff's return information to various suspects, third parties, and federal and state agents in violation of 26 U.S.C. § 6103. Federal law mandates that tax returns and return information must be confidential unless otherwise authorized. § 6103(a). "[N]o officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise

---

[43] No liability shall arise under section 7431 with respect to any inspection or disclosure, however, that "results from a good faith, but erroneous, interpretation of section 6103," or "which is requested by the taxpayer." § 7431(b).

or under the provisions of this section." *Id.* Under this section,

> [t]he term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

§ 6103(b)(1). Additionally, the term "return information" means:

> (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,
>
> (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,
>
> (C) any advance pricing agreement entered into by a taxpayer and the Secretary and any background information related to such agreement or any application for an advance pricing agreement, and
>
> (D) any agreement under section 7121, and any similar agreement, and any background information related to such an agreement or request for such an agreement,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer. Nothing in the preceding sentence, or in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

§ 6103(b)(2).

### 1.    Count 1

In count 1 Plaintiff alleges that Agent Weiss unlawfully seized Plaintiff's tax return information from Turbo Tax. Once obtained, Agent Weiss unlawfully inspected the information and then disclosed the information to the SSA to confirm the information in contrast to the others involved in the investigation.

As discussed, because Agent Weiss was permitted to subpoena the tax return information from Turbo Tax, he did not "unlawfully seize" Plaintiff's information. *See* U.S.C. § 7602. Likewise, according to Plaintiff's allegations, the only information in the subpoena was the IP address.  And as Defendants point out, while section 6103 imposes restrictions on the IRS' ability to disclose that information, it does not limit the information that the IRS may seek in the course of an investigation. *See DiAndre v. United States*, 968 F.2d 1049, 1053 (10th Cir. 1992).

The investigative exception provides,

> [a]n internal revenue officer or employee and an officer or employee of the Office of the Treasury Inspector General for Tax Administration may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosure shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

§ 6103(k)(6). An IRS agent may disclose return information to confirm or corroborate information already obtained. 26 C.F.R. § 301.6103(k)(6)-1(c)(3). "The decision whether to verify information already obtained is a matter of investigative judgment and is not limited by section 6103(k)(6)." § 301.6103(k)(6)-1(d) (example 3).

In this case, Plaintiff alleges that Agent Weiss disclosed the information to the SSA to confirm whether the information was correct. If true, this disclosure falls squarely within section 6103's investigative exception. Consequently, because Plaintiff has failed to state a claim for either unlawful seizure or unlawful disclosure[44] count 1 should be

---

[44] Plaintiff argues that Defendants' motion as to counts 1–7, 28–34, 36–37, 39–42, 44–52, 54–63, 65, and 69 "attacks the unintelligivility [sic] of the complaint, not simply the lack of detail, and therefore, this court should construe the motion as one

dismissed.

## 2.   Counts 2–7

Counts 2–7 fail to state a claim for relief. In Counts 2–7 Plaintiff

asserts that Agent Weiss unlawfully disclosed Plaintiff's tax return

information to various IRS agents, including Agent Pekerol.

Section 6103(h)(1) provides that "[r]eturns and return information

shall, without written request, be open to inspection by or disclosure to

_____

under Rule 12(E)." (ECF No. 96 at 15.) The Court declines to treat Defendants' motion to dismiss as a motion for a more definite statement. First, the Court does not agree that Defendants' motion to dismiss attacks the unintelligibility of these counts. Plaintiff does not proffer what parts of the motion suggest such, nor can the Court find any. Secondly, even if it did, Defendant's motion to dismiss—as to many of the counts—argues that the conduct complained of simply does not constitute a violation of a constitutional right or a federal statute. Surely then, Plaintiff's inflated argument is nothing more than an attempt to avoid dismissal. Thirdly, Plaintiff's reliance on *Wallace v. Brownell Pontiac-GM Co., Inc.*, 703 F.2d 525 (11th Cir. 1983), is erroneous. *Wallace* considered whether a district court may grant a motion for summary judgment before the opposing party had the opportunity to undertake discovery. 703 F.2d at 527. Defendants have not filed a motion for summary judgment, nor is the court construing their motion to dismiss as such. Fourthly, contrary to Plaintiff's assertion, the Eleventh Circuit has not "already decided the disclosure issues adversely to Defendant's argument." *See infra* n.54.

A motion to dismiss for failure to state a claim exists for a reason. The Court refuses to set precedent by (*sua sponte* or on the plaintiff's request) construing a motion to dismiss as a motion for more definite statement, thereby allowing a plaintiff to simply bypass the pleading requirements of Fed. R. Civ. P. 8 (a). *See Dean v. United States*, No. 09-309-MLC, 2010 WL 1257792, at *5 (D.N.J. Mar. 29 2010 (denying plaintiff's request "to conduct discovery in order to specifically allege unauthorized disclosures," because discovery is not permitted "for the sole purpose of allowing the plaintiff to construct his case"). Plaintiff has had three opportunities to properly state his claims. (ECF Nos. 1, 56, 65 (ECF No. 80 simply included a page missing from ECF No. 65).) Despite the fact that his original complaint did not assert constitutional violations, Plaintiff was nonetheless provided an opportunity to amend his constitutional claims based on the Court's guidance regarding the deficiencies in those claims. *See* ECF Nos. 56, 58. If Plaintiff has failed to do so on the fourth go-around, it suggests that he has been unable to state a valid claim for a reason.

officers and employees of the Department of the Treasury whose official

duties require such inspection or disclosure for tax administration

purposes."

Each of the agents to whom Plaintiff alleges Agent Weiss disclosed

the information, was involved in the relevant criminal investigation.[45] While

Plaintiff contends that none of these agents were assigned to the

Inspection Division, nothing in the statute provides that the returns and

return information may only be disclosed to IRS agents assigned to the

Inspection Division. Plaintiff has not and cannot state a claim for relief for

disclosure to other IRS agents involved in the criminal investigation.[46]

Counts 2–7 should be dismissed.

---

[45] *See* ECF No. 80 at 9, 11–12 (counts 16–20, 30–33, and 35).

[46] Contrary to Plaintiff's response, the Eleventh Circuit has not "already decided the disclosure issues adversely to Defendant's argument." (ECF No. 96 at 16.) The Eleventh Circuit determined that Plaintiff should be given an opportunity to amend his complaint because the investigative exception in section 6103 did not necessarily render amendment futile. *Taylor v. Pekerol*, 624 F. App'x 691, 694–95 (11th Cir. 2015). The Eleventh Circuit stated, "it is unlikely that Taylor could raise a plausible claim based on disclosures to other federal law enforcement officers involved in his criminal investigation, any judge, or a grand jury." *Id.* at 694. The court explained, however, that the disclosure of Plaintiff's return information to various criminal suspects and other non-law enforcement individuals may not be justified by an exception in section 6103. *Id.* at 694–95. As Defendants point out, the Eleventh Circuit "did not examine whether Plaintiff sufficiently alleged the disclosure of 'return information' or whether the Treasury Regulations authorized the IRS agents to disclose to witnesses that Plaintiff was the target of a criminal investigation." (ECF No. 99 at 7.); *see Taylor*, 624 F. App'x at 694–95.

### 3.   Counts 28–29, 34, and 39–41

In Counts 28–29 and 34 Plaintiff alleges that Agents Pekerol and

Weiss disclosed Plaintiff's tax return information to various third-

parties—two of Plaintiff's potential clients and one Channel 13 news

reporter. Plaintiff says Agents Pekerol and Weiss questioned the potential

clients about whether Plaintiff's office filed taxes and disclosed to the news

reporter that the tax return information was fraudulent.

Similarly, in counts 39–41 and 57 Plaintiff asserts that IRS agents

disclosed Plaintiff's tax return information to various suspects. Plaintiff

alleges that all of these disclosures were unnecessary.

The allegations plausibly suggest these disclosures were unlawful

under section 6301. Despite the fact that the claims are rather bare,

Plaintiff has offered more than a mere formulaic recitation of the elements

of unlawful disclosure. Although Plaintiff does not specify what specific

information was disclosed, the Court must view these allegations in the

light most favorable to Plaintiff and accept the reasonable inference that

the return information was, to some extent, information as defined in

section 6103(b)(2).  And, provided the disclosures do not fall under one of

section 6103's exceptions, the disclosures would be unlawful.

Defendants contend that counts 28–29, 39, 41, and 57 fall within the

investigative exception. *See* § 6103(k)(6). It is premature, however, to conclude that this exception applies. Even though Plaintiff alleges that Defendants questioned the potential clients, Plaintiff says the disclosures were unnecessary. At this point, it is unclear whether the disclosures were necessary for obtaining information that was not otherwise reasonably available, or whether the disclosures were made to confirm or corroborate information already obtained. See §§ 301.6103(k)(6)-1(c)(3), (k)(6)-1(d). While the disclosures may ultimately prove to fall within the investigative exception, the Court is limited to Plaintiff's allegations, which do not suggest that the disclosures were necessary or made to confirm or corroborate information.

Defendants also argue that counts 34 and 40 are nothing more than bare legal claims. While admittedly Plaintiff offers very little to support his claims, what he has alleged does plausibly suggest that the disclosures were unlawful. If, as alleged in count 34, Agents Pekerol and Weiss disclosed Plaintiff's tax return information to the news reporter—whether it was the Turbo Tax report, the nature of his income, his liabilities, or other information under section 6103(b)(2)—and represented that the information was fraudulent, then doing so would have been unlawful under § 7431. Likewise, if Agents Pekerol and Weiss disclosed Plaintiff's tax

return information to suspect Jeremy Nelson and the disclosure was not permitted by the investigative exception, doing so also would have been unlawful. Accordingly, Defendants' motion to dismiss with respect to counts 28–29, 34, 39–41, and 57 should be denied.

### 4.   Counts 30–33

In Counts 30–33 Plaintiff alleges that on May 1, 2012, IRS agents disclosed—either directly or indirectly—Plaintiff's tax return information to a DEA Agent, USM Miller, Ms. Risinger, and local law enforcement officers. Plaintiff says the IRS agents permitted these individuals to inspect the Turbo Tax report containing his information. The disclosures were made during an unrelated investigation, but were nonetheless made in preparation for obtaining and executing a search warrant at the Steele Boys Bail Bonds office.

Defendants argue that these disclosures fall squarely within the investigative exception. The Court agrees. As discussed, for the investigative exception to apply, the disclosure must have been made to obtain information not otherwise reasonably available, or to confirm or corroborate the information. It is difficult to imagine how these authorities could execute a search warrant without knowing what they are looking for. The authorities would have to know who the target was (for example, to

find documents associated with the target) and what they were looking for. The only allegation here is that Plaintiff's office was searched during the tax fraud investigation. The allegations do not suggest, for example, that the authorities were searching his office for something completely unrelated to his return information.

The purpose of a search warrant is to obtain information and evidence related to the investigation. Although Plaintiff conclusorily and baldly asserts the disclosures were unnecessary, it is simply inconceivable how disclosing this information to authorities to obtain and execute the search warrant was unnecessary.  And, despite Plaintiff's assertion that the disclosures were made during an unrelated investigation, this does not negate the fact that the disclosures were made in preparation for obtaining and executing the search warrant.

Moreover, with respect to Ms. Risinger, she was the lead United States Attorney assigned to Plaintiff's case.[47] Section 6103(h)(2)(A) provides,

> [i]n a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a Federal

---

[47] *See generally Taylor*, No. 5:13-cr-13-MW.

grand jury or preparation for any proceeding (or investigation
which may result in such a proceeding) before a Federal grand
jury or any Federal or State court, but only if . . . the taxpayer is
or may be a party to the proceeding, or the proceeding arose
out of, or in connection with, determining the taxpayer's civil or
criminal liability, or the collection of such civil liability in respect
of any tax imposed under this title.

It follows that the IRS agents were permitted to disclose any and all

information to Ms. Risinger in order to properly prosecute Plaintiff.

Plaintiff's allegations do not plausibly suggest that the disclosures to

these authorities were unlawful. Counts 30–33 should be dismissed.

### 5.   *Counts 36–37* and *46–51*

In Counts 36–37 Plaintiff alleges that the IRS agents disclosed to

various third-parties that Plaintiff was the target of a tax fraud investigation.

Plaintiff alleges that each of these disclosures was unnecessary.

As alleged, Plaintiff plausibly states a claim for relief. IRS officers and

employees may identify themselves, their organizational affiliation with the

IRS, and the nature of their investigation—including the identify of the

person being investigated—when making oral, written, or electronic

contacts with third-party witnesses. *See* § 301.6103(k)(6)-1(a)(3). They

may also disclose that an individual is being investigated, as well as the

nature of the investigation, to confirm information already obtained. *See id.*

§ 301.6103(k)(6)-1(c)(3), and (d) (examples 2 and 3 respectively).

Plaintiff's allegations do not suggest, however, these third parties were witnesses from whom the agents sought information or that the agents sought the information  to confirm or corroborate other information. Instead, Plaintiff alleges that the IRS agents simply told these random third parties that Plaintiff was being investigated for tax fraud.  While it is highly likely the agents disclosed this information during interviews as a part of the investigation, such a determination is premature. Accordingly, Defendants' motion to dismiss with respect to counts 36–37, should be denied.

### 6.    Counts 42 and 45

In Count 42 Plaintiff asserts that Agents Pekerol and Weiss disclosed to Inspector Smith that Plaintiff's business advertisements were targets of items used to solicit personal identifying information from inmates in a prison tax fraud investigation. Plaintiff also asserts in count 45 that Agents Pekerol and Weiss later disclosed to Inspector Smith that Plaintiff was the suspect for fraudulent returns filed in the names of six inmates.

Count 42 does not allege that Plaintiff's tax return information was disclosed to Inspector Smith. The Court is unaware of any instances where informing a state prison inspector of a mechanism being used to solicit personal information from inmates, resulting in prison tax fraud, gives rise

to an unlawful disclosure claim. Plaintiff does not allege that this somehow disclosed his confidential tax return information. Nor does Plaintiff allege that Agents Pekerol and Weiss specifically discussed Plaintiff. Instead, he merely alleges that Agents Pekerol and Weiss informed Inspector Smith of the forms being used to obtain the information.

Additionally, to the extent Agents Pekerol and Weiss disclosed Plaintiff's tax return information in count 45 by disclosing Plaintiff's name and that he was being investigated for tax fraud, section 6103(k)(10) permits such a disclosure. Section 6103(k)(10) states,

> Under such procedures as the Secretary may prescribe, the Secretary may disclose to officers and employees of the Federal Bureau of Prisons and of any State agency charged with the responsibility for administration of prisons any returns or return information with respect to individuals incarcerated in Federal or State prison systems whom the Secretary has determined may have filed or facilitated the filing of a false or fraudulent return to the extent that the Secretary determines that such disclosure is necessary to permit effective Federal tax administration.

Agents Pekerol and Weiss were authorized to disclose that Plaintiff was being investigated for prison tax fraud with respect to the six inmates whose information facilitated the filing of a false return. Plaintiff has failed to state a claim in either count 42 or 45. Accordingly, counts 42 and 45 should be dismissed.

### 7.    Counts 44 and 54–55

Plaintiff asserts in count 44 that Agents Pekerol and Weiss "unlawfully received" information from Inspector Smith related to prior prison tax fraud investigations, which was otherwise prohibited from re-disclosure. In count 54 Plaintiff says Agents Pekerol and Weiss received follow-up information from Mr. Steele related to suspects in an unrelated investigation. Finally, in count 55 Plaintiff asserts that as a result of Agent Pekerol and Weiss' initial unlawful disclosure to Ms. Harmon, Ms. Harmon informed them that Plaintiff had been arrested in Alabama.

While section 7431 provides a cause of action for unlawful disclosure, the Court is unaware of any authority that provides a cause of action for "unlawful receipt" of information.  Additionally, it is irrelevant to Plaintiff's confidential information whether Defendants received any information from Mr. Steele about other suspects in an unrelated investigation. Counts 44 and 54–55 should, therefore, be dismissed.

### 8.    Counts 46–52, 56, 58, and 61

In Counts 46–51, 56, and 58 Plaintiff alleges that Agents Pekerol and Weiss unlawfully disclosed Plaintiff's return information to various inmate suspects by informing the suspects that Plaintiff and his business were the target of prison tax fraud. Count 52 asserts that the same disclosure was

made to an inmate interviewee. Plaintiff further says the agents showed his picture to the suspects and interviewee, which constitute suggestive identifications. With respect to the suspects in counts 56 and 58, the agents also had the suspects sign affidavits.

In count 61, Plaintiff claims Agents Pekerol and Weiss unlawfully disclosed to Plaintiff's former employer that Plaintiff was the target of prison tax fraud and questioned the former employer as to the veracity of Plaintiff's previous employment.

As previously discussed, IRS agents may reveal the nature of their investigation and the identity of the person being investigated when making contacts with third-party witnesses to either obtain, confirm, or corroborate information. *See* §§ 301.6103(k)(6)-1(a)(3), (k)(6)-1(c)(3), and (k)(6)-1(d).

In this case, Plaintiff's allegations do not plausibly suggest that the alleged disclosures fall outside the investigative exception. First, nothing suggests that the agents disclosed anything other than that Plaintiff was the target of a prison tax fraud investigation to the inmates. For example, Plaintiff does not allege that the agents permitted the third-parties to inspect his Turbo Tax report.

Secondly, it is evident from Plaintiff's allegations that the agents were interviewing the inmate in count 52 and the suspects in counts 56 and 56

as part of their criminal investigation of Plaintiff. Plaintiff defines the inmate in count 52 as an "interviewee," and none of his allegations suggest that the interview was related to anything other than the investigation at hand. Likewise, Plaintiff alleges in counts 56 and 56 that the agents had the suspects sign affidavits, which clearly suggests that the contact was an interview seeking information. Moreover, none of Plaintiff's allegations suggest that the affidavits related to anything other than the investigation.

Thirdly, the allegation in count 61 that the agents questioned Plaintiff's former employer about the veracity of Plaintiff's previous employment evidences that the disclosure falls within the investigative exception. Even though the agents already had Plaintiff's employment information, the agents' decision to verify the accuracy of the information was a matter of investigative judgment and is not limited by section 6103(k)(6). *See* § 301.6103(k)(6)-1(d) (example 3). And like the counts related to the inmates, Plaintiff does not allege that anything was disclosed to his former employer other than that Plaintiff was the subject of a tax fraud investigation.

In his response, Plaintiff argues that the IRS agents were not permitted to initiate contact with third-parties and disclose Plaintiff's tax return information unless the third-party contacted the agents first. (ECF

No. 96 at 12.) This argument misunderstands the relevant law. It is true

that "imparting to a witness information to the effect that a particular

taxpayer is under investigation for possible tax law violations constitutes a

'disclosure' of that taxpayer's 'return information.'" *Jones v. United States*,

869 F. Supp. 747, 754 (D. Neb. 1994). Nonetheless,

> simply because such a disclosure has been made does not
> mean that section 6103 has been violated because, of course,
> section 6103 explicitly describes various exceptions authorizing
> disclosure. Moreover, even if there is a violation of section
> 6103, in order to recover damages against the United States
> pursuant to section 7431, there must be proof that the violation
> of section 6103 occurred "knowingly, or by reason of
> negligence" and not because of a "good faith"
> misunderstanding of section 6103.

*Id.* There is a difference between a *disclosure* of return information and an

*unlawful disclosure* of return information. Despite the IRS agents' initiation,

disclosing to third parties that Plaintiff was the target of a tax fraud

investigation does not violate section 6103 because the investigative

exception permits the IRS agents to do so when seeking to obtain, confirm,

or corroborate information.

In sum, Plaintiff's allegations fail to plausibly suggest that Defendants

unlawfully disclosed tax return information to these third-parties.

Accordingly, counts 46–52, 56, 58, and 61 should be dismissed.

### 9.   Count 59

In Count 59 Plaintiff asserts that Agents Pekerol and Weiss

unlawfully disclosed Plaintiff's tax return information by contacting Judge

Peterson, state law enforcement, Mr. Valeska, and the state court clerk

and falsely representing that Plaintiff was wanted for "'embezzling millions

of dollars in tax fraud through his business and was a well known armed

trafficker' misleading the officials to believe they had caught a notorious

criminal who was eluding Government officials . . . ." (ECF No. 80 at 19.)

Plaintiff also says that on November 6, 2012, Agents Pekerol and Weiss

disclosed in open court during Plaintiff's state court proceedings that

Plaintiff was the target of a grand jury tax fraud investigation. Plaintiff was

not indicted on federal charges, however, until March 20, 2013.[48]

Defendants contend that these disclosures fall within the

investigative exception and, therefore, do not constitute unlawful

disclosure. The Court agrees.

The agents disclosed that Plaintiff was the subject of a tax fraud

investigation to other agencies, judicial officials, and a state prosecutor. All

of these disclosures relate to the investigation. Notably, there are no

allegations that the agents disclosed the particulars of the investigation or

---

[48] *See Taylor*, No. 5:13-cr-13, ECF No. 1.

disclosed Plaintiff's tax return information.[49] In the amended complaint

Plaintiff alleges only that the agents disclosed that Plaintiff was the subject

of a tax fraud investigation. Plaintiff's allegations do not plausibly suggest

that this disclosure was for anything other than investigative purposes. This

is so for the following reasons.

First, it is clear based on the allegations and the clarifications in

Plaintiff's response that Agents Pekerol and Weiss wanted to question

Plaintiff regarding their investigation.[50] As asserted in count 55, the agents

found out from Ms. Harmon that Plaintiff had been arrested in Alabama on

drug trafficking charges. In his response to Defendants' motion to dismiss,

Plaintiff clarifies that the agents had tried to set up interviews with Plaintiff

in May 2012, but that attempts were unsuccessful. (ECF No. 96 at 2, Ex.

A1–A2.)  Thus, when the agents learned that Plaintiff had been arrested,

---

[49] Even though Plaintiff's claim begins by asserting that the agents "unlawfully disclosed Plaintiff's tax return information," he proceeds to explain that the agents did so by contacting the state authorities and informing them that they were investigating Plaintiff. (ECF No. 80 at 19.)

[50] "Although the materials considered on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) are generally limited to the complaint and attached exhibits, the Court can consider Plaintiff's response to the extent they clarify the allegations in his complaint." *McCroan v. Morgan*, No. 4:13-cv-370-MW/GRJ, 2014 WL 1572690, at *3 (N.D. Fla. Apr. 16, 2014) (citing *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (citing Wright & Miller, Fed. Practice & Procedure § 1364; *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 428 n.8 (3d Cir. 1999); *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 911 (D.C. Cir. 1997); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992))) (using plaintiff's response brief to clarify allegations in her complaint).

they contacted the state authorities and asked them to hold Plaintiff until they could get there. These allegations do not plausibly suggest anything other than that the purpose of contacting the state authorities was to let them know that they needed to speak with Plaintiff regarding the federal investigation. And surely it was necessary to inform the clerk of the state court, state law enforcement (who presumably had custody of Plaintiff), Mr. Valeska (who represented the state on terms of bail), and the judge responsible for releasing Plaintiff.

In his response, Plaintiff argues that "'[a] knowingly false disclosure' such as made by Defendants to Alabama Officials 'cannot be made in good faith because it would be contrary to established rights of which a reasonable person would have known.'" (ECF No. 96 at 11–12.) This argument appears to be that the good-faith exception does not apply to the unlawful disclosures. The relevant standard for the good-faith analysis, however, is whether "1) the agent or agents who disclosed tax return information in violation of § 6103 followed the relevant agency regulations and/or manuals, and 2) [whether] the regulations and/or manuals followed by those agents constituted a reasonable interpretation of the law." *Comyns v. United States*, 155 F. Supp. 2d 1344, 1350 (S.D. Fla. 2001), *aff'd*, 287 F.3d 1034 (11th Cir. 2002). It is irrelevant whether a disclosure

was made contrary to established rights of which a reasonable person would have known. Nonetheless, the Court need not consider the good-faith exception at this point because the disclosure was not unlawful.

Secondly, Plaintiff alleges that on November 6, 2012, when the agents arrived in Alabama, the agents disclosed in open court that Plaintiff was the target of a grand jury tax fraud investigation. In his response, Plaintiff attaches a memorandum from Agents Pekerol and Weiss detailing their November 6, 2012 contact with Plaintiff in Alabama, which clarifies Plaintiff's allegations. (ECF No. 96, Ex. A3.) During the agents' interview with Plaintiff, it became apparent that the state judge wanted to know who they were and why they were at the state court proceedings. (*Id.*) [51] In speaking with the judge at the bench, the agents identified themselves and explained that their investigation involved tax matters, "but because it was a Federal Grand Jury matter [they] were not allowed to disclose the particulars." (*Id.*)

It is not plausible that the agents' disclosures in state court were for anything other than accomplishing properly Plaintiff's interview. *See* § 301.6103(k)(6)-1(a)(1) (stating that IRS officers "may disclose return

---

[51] The memorandum explains that Mr. Valeska erroneously represented to the court that the agents were there with the DEA and were involved in a drug-related federal investigation of Plaintiff. (*Id.*)

information, of any taxpayer, to the extent necessary to obtain information relating to such official duties or to accomplish properly any activity connected with such official duties"). What could be more pertinent to the investigation of Plaintiff than questioning the target of the investigation? The agents were interrupted, however, in the middle of questioning Plaintiff to clarify to the state judge, their identity and why they were present. The allegations and the clarifications in Plaintiff's response do not plausibly suggest that the disclosure in open court was made for anything other than interviewing Plaintiff. Accordingly, count 59 should be dismissed.

### 10.   Count 62

In count 62, Plaintiff says Agents Pekerol and Weiss disclosed information to and solicited information from Mr. Steele. According to Plaintiff, this disclosure and solicitation related to rumors about items seized from Plaintiff's office in connection to other suspects, who were unrelated to Plaintiff. Plaintiff claims this was an attempt to build a conspiracy.

Plaintiff's claim wholly fails to state a claim for relief. Plaintiff does not allege that his tax return information was disclosed or solicited. Instead, he merely says his information was disclosed. Merely disclosing and soliciting information during an investigation surely does not give rise to an unlawful

disclosure claim. Plaintiff's claim is vague and provides no facts suggesting that the agents engaged in unlawful conduct. Count 62 should be dismissed.

### 11.   Counts 63 and 65

Counts 63 and 65 wholly fail to state claims for relief. In count 63, Plaintiff asserts that USM Miller unlawfully disclosed to Mr. Valeska that Plaintiff had been arrested for tax fraud crimes. Similarly, count 65 claims USM Miller disclosed information with the intent to make Alabama bail bond agents request Judge Peterson to revoke Plaintiff's state bail because of Plaintiff's federal charges.

To construct a claim for unlawful disclosure of returns or return information, a plaintiff must—at the bare minimum—allege that the defendant disclosed either a return or return information. *See* § 7431(a)(1) (requiring that the inspection or disclosure either be of a "return or return information"). Here, Plaintiff only alleges that USM Miller told Mr. Valeska that Plaintiff had been arrested for tax fraud. Stating that someone was arrested for tax fraud does not constitute an unauthorized disclosure of return or return information in violation of section 6103 or 7431. If that was the case, any defendant who has ever been arrested for federal tax fraud could obtain unlimited damages from the United States as soon as the

arrest became public and word spread.

As to the Alabama bail bond agents, Plaintiff merely alleges that "information" was disclosed. As discussed previously, merely disclosing information does not give rise to an unlawful disclosure claim.  And to the extent Plaintiff's claim is liberally construed to mean that Defendants disclosed that Plaintiff had been arrested, such disclosure is not unlawful under section 6103.  Accordingly, for these reasons, counts 63 and 65 should be dismissed for failure to state a claim.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.    The Motion to Dismiss Filed on Behalf of Defendants United States and IRS Special Agents Christopher Pekerol and Margaret Weiss, ECF No. 88, should be **GRANTED in part** and **DENIED in part**.

2.    Counts 1, 2–7, 30–33, 42, 44–52, 54–56, 58, 61–63, and 65 should be **DISMISSED** for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** this 12th day of August, 2016.

s/Gary R. Jones

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**